# ROBINSON v. FAIR.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF CALIFORNIA.

No. 18. Argued April 9, 10, 1888. — Decided. October 22, 1888.

The State Constitution in force in California prior to 1880 authorized the
legislature to confer upon Probate Courts jurisdiction of proceedings
for the partition of real estate, as ancillary or supplementary to the
settlement and distribution of the estates of deceased persons coming
within the cognizance of such courts.

The legislature of California, under the Constitution in force prior to 1880,
conferred upon the Probate Courts of the State power, after final settle-
ment of the accounts of a personal representative, and after a decree of
distribution, defining the undivided interests of heirs in real estate in
the hands of such representative, (neither the title of the decedent nor
the fact of heirship being disputed,) to make partition of such estate
among the heirs, so as to invest each separately with the exclusive pos-
session and ownership of distinct parcels of such realty, as against co-
heirs; and such a grant of power does not appear to be foreign to the
jurisdiction usually pertaining to such tribunals in this country

The decisions of the Supreme Court of California examined and shown to
be in harmony with the two points above stated.

The difference between distribution and partition of real estate among heirs
pointed out.

A Circuit Court of the United States has no jurisdiction to set aside a de-
cree of partition in a state Probate Court authorized by law to make it;
nor can it refuse to give full effect to the decree unless the Probate
Court was without jurisdiction in the case.

The jurisdiction of a Probate Court to make partition of real estate of a
decedent among his heirs is not defeated by the fact that the proceedings
for it were originated by a petition of the administratrix, who was also
an heir at law, asking for a settlement of her accounts as administratrix,
and for the adjudication of her rights as heir at law, by partition of the
real estate; the record showing that the court made the decree for the final
settlement and distribution of the estate before it entered upon the ques-
tion of partition.

The record in this case does not support the contention that proper notice
of the proceedings in the Probate Court for the partition of the real
estate was not given to the minor children.

At the time when the proceedings took place, which form the subject of
controversy in this suit, there being no provision of law in force in Cali-
fornia, requiring the appointment of guardians ad litem of infants, in
probate proceedings, it was sufficient for them to be represented in such
proceedings by an attorney, appointed by the court for that purpose.

THIS case involved the title to a fifty-vara lot in the city of San Francisco, numbered two hundred and five on its official map. It was a part of the separate estate of Horace Hawes, senior, who died, intestate, in that city, on March 12, 1871, leaving as his only heirs at law, his widow Caroline Hawes, and two minor children; Horace Hawes, junior, born March 22, 1859, and Caroline C. Hawes, born August 26, 1864. In December, 1871, the widow qualified as administratrix in the Probate Court of the city and county of San Francisco. In that capacity she took possession, as was her duty under the law of California, of the entire estate of her deceased husband, and held it subject to the control of that court. Civil Code, § 1384; Code of Civil Procedure, § 1581.

In addition to the above lot, the intestate was the owner, at the time of his death, of a large amount of property, principally real estate, in the counties of San Francisco and San Mateo, some of which was community property, and the residue separate property. By the law of California, upon the death of the husband, intestate, one-half of the community property goes to the surviving wife, and the other to his descendants equally, or, in the absence of descendants, according to the right of representation, and in the same manner as the separate property of the husband; and upon the death of the husband, leaving a widow and more than one child living, or the lawful issue of one or more deceased children, one-third of his estate, not otherwise limited by marriage contract, goes to the widow, and the remainder in equal shares to his children and to the lawful issue of any deceased child by right of representation. Civil Code, §§ 163, 164, 687, 1386, 1402.

The estate was divided by proceedings commenced, February 18, 1875, by Mrs. Hawes, administratrix, in the Probate Court of the city and county of San Francisco. They were instituted for the purpose of obtaining a final settlement of her accounts, and, also, the distribution and the partition of the estate. Such a settlement was had, and, after a decree of distribution was passed, the court proceeded to make partition between the heirs, according to their respective interests, of the various parcels of real estate remaining in the hands of the

administratrix. By the final decree of partition, rendered April 19, 1875, certain property, including the above lot, was set apart to the widow, while other lands in that county, and in San Mateo County, were allotted to the children.

By deed of May 24, 1875, and for the consideration of three hundred thousand dollars, the widow conveyed the above lot to James C. Flood. The latter was in possession under his purchase until August 21, 1876, when he sold and conveyed, for a like sum, to James G. Fair, who, prior to the present litigation, put upon the lot substantial improvements of the value of several hundred thousand dollars.

On the 6th of April, 1881, Caroline C. Hawes intermarried with James A. Robinson, who had previously, February 24, 1881, qualified as her guardian.

The present suit was brought, June 6, 1882, in the names of Mrs. Robinson, (by her husband as guardian,) and Horace Hawes, Junior, to recover two undivided thirds of said fifty-vara lot. In the progress of the cause Mrs. Robinson was joined with her brother as an original plaintiff in her own right. The defendant claimed title under the decree of partition in the Probate Court. That decree, the plaintiffs insisted, was void. A jury having been waived, there was judgment for the defendant, the court below holding that the proceedings in the Probate Court were in conformity, in all respects, with law.

The foregoing statement forms part of the opinion of the court in this case. The court below gave no opinion. In addition to that statement the justice who delivered the opinion in this court has kindly furnished the following summary of other facts forming essential parts of the case :

On the 18th of February, 1875, the real estate of the decedent, remaining in the hands of the administratrix, consisted of what is known as Mission Block No. 44, the southeasterly part of Mission Block No. 8, Mission Block No. 2, and the fifty-vara lot No. 205, in San Francisco; also, the Redwood farm and certain villa lots in San Mateo County. The two parcels first named were acquired in 1860, after the marriage of Mrs. Hawes with the intestate, and were, therefore, "com-

mon" property. The other parcels were the separate property of the decedent. All those parcels were in the hands of the administratrix, because, by the law of California, a personal representative, whether executor or administrator, is required to take possession of all the estate, real and personal, of the decedent; and his possession for the purpose, among other things, of partition, is that of the heirs or devisees, although their possession is subject to his for purposes of administration. Code of Civil Procedure, § 1581.

On the day last named, Caroline Hawes instituted proceedings in the Probate Court, of the city and county of San Francisco, to obtain a final settlement of her accounts, and to have a distribution and partition of the estate remaining in her hands, as administratrix, between herself and the minor children, according to their respective rights, and pursuant to the statute in such cases made and provided. To that end she prayed that an order be made " directing that all persons interested in this estate appear before this court at a time and place to be specified, not less than four, or more than ten weeks from the time of making said order, to show cause why an order should not be granted directing that partition be made in said estate, and that distribution be made °of the estate of Horace Hawes, deceased; and that partition be made of the real estate thereof, among the persons entitled thereto; or if the same cannot otherwise be fairly divided, that the same be sold and the proceeds distributed among those entitled; or that such other or further or different order may be made as will be just and proper in the premises."

Upon that petition an order was made that all persons interested in the estate appear before the court on the 23d of September, 1875, to show cause why the final account filed by the administratrix should not be settled, allowed, and approved. That order also declares:

" And whereas said account is for final settlement, and it duly appearing that said estate is ready for distribution, and that, upon confirmation of said final account, distribution and partition of all said estate to all persons entitled thereto has been duly demanded:

"It is further ordered, that all persons interested in said estate, be and appear before said court, at the time and place aforesaid, without further notice or proceeding therefor, and then and there show cause, if any they have, why distribution of the residue of said estate should not be made among the heirs at law of said deceased, according to law and the respective rights of all the parties; and, also, at the same place, immediately after decree of distribution of said estate is made, without further notice, to show cause why said court shall not make an order appointing commissioners, or a commissioner, as it may seem best, to make partition and division of said estate among the heirs at law of said deceased, according to the respective rights of the parties and the decree of distribution, and to set aside to each his and her share, according to the proportions decreed to him, her, or them, or to report his or their inability to make partition of the whole or certain part or parts of said estate without sale, or without prejudice or inconvenience, and also to report and find the true value of all said real estate belonging to said estate.

"And it is further ordered, that notice of the foregoing be given by publication, and that a copy hereof be published once a week for four successive weeks, before said 23d day of March, 1875, in the *Daily Examiner*, a daily newspaper printed and published in said city and county."

Subsequently, the Probate Court made the following order:

"Whereas, Chas. H. Sawyer, a competent attorney at law, has hitherto represented Horace Hawes and Caroline C. Hawes, minors, heirs of said deceased:

"It is now by the court here ordered, that said Chas. H. Sawyer, an attorney at law and of this court, be and is hereby appointed to represent said minors, Horace Hawes and Caroline C. Hawes, in the partition and distribution of said estate and all other proceedings, when all of the parties in said estate or said heirs are required to be notified thereof.

"Done in open court this 29th day of March, 1875."

On the same day a decree was passed, "J. C. Bates appearing on behalf of said administratrix, and Chas. H. Sawyer, Esq., appearing on behalf of Horace Hawes and Caroline

C. Hawes, children of said deceased," — which found and declared: That it appeared to the satisfaction of the court that due and sufficient notice of the time and place of hearing of said petition for distribution and partition had been given, as required by law; that the final accounts of the administratrix had been duly settled by the court, and that the estate was "in proper condition for distribution and partition, and to be finally closed;" that certain portions of said real estate were common property, and the residue was separate property; that the widow was entitled to an undivided half, and the two children together to an undivided half, of the former, while the widow and the children were each entitled to an undivided one-third of the latter. It was adjudged and decreed that all the acts and records of the administratrix, appearing upon the records of the estate, be approved and confirmed, and that the residue of said estate " be and the same is hereby distributed" as follows: One undivided half of Mission Block No. 44, and the southeasterly part of Mission Block No. 8, less a certain school lot, to Caroline Hawes, and the other undivided half to the two children; and an undivided third to the widow of Mission Block No. 2, the fifty-vara lot No. 205, and of the lands in San Mateo County; and the remaining two-thirds thereof, undivided, to the children, share and share alike. The decree concludes with a particular description of the several parcels of land so distributed.

The judgment-roll of the proceedings in the Probate Court also contains this order:

" The petition of Caroline Hawes, administratrix and heir at law of the estate of Horace Hawes, deceased, for partition of said estate, according to law, coming on regularly to be heard this 29th day of March, 1875, immediately after the decree distributing said real estate being made, J. C. Bates appearing for said petitioner, and Chas. H. Sawyer, Esq., appearing for and representing Horace Hawes and Caroline C. Hawes, minor heirs of said deceased, and upon consent in open court of all parties interested to the appointment of James L. King, sole commissioner for the purposes of partition and division of the estate of said deceased :

"And said court deeming it just and proper that said James L. King be appointed sole commissioner for such purposes, and all and singular the law and the premises being by the court here seen, heard, understood, and fully considered:

"Whereupon, it is now by the court here ordered, adjudged, and decreed that partition and division of said real estate, described in the decree of distribution herein, be made in ac-cordance with the rights of the parties as determined by said decree of distribution.

"And it is further ordered, that the said James L. King be and he is hereby appointed sole commissioner for that purpose, and whose duty it shall be to make partition and division of said real estate described in said decree of distribution, in ac-cordance with the rights and interests of the respective parties as therein determined, and make report of the proceedings and partition in writing to this court.

"Done in open court this twenty-ninth day of March, A. D. 1875."

On the 2d of April, 1875, Charles H. Sawyer, as said at-torney for the minor heirs, and J. C. Bates, as attorney for the widow and administratrix, acknowledged service of a written notice from King, as commissioner, that he would, on the eighth day of that month and year, at his office, in the city of San Francisco, "proceed to make partition of the prop-erty described in the decree of distribution in [of] said estate, in accordance with the rights of respective parties as there-in described."

On the 13th of April, 1875, the commissioner made his re-port in which it is stated that, in making the division and partition of the property, he was attended by Mr. Sawyer, as attorney for the minor heirs of the decedent, and by Mr. Bates, as attorney for the widow; that, after a thorough examination of the premises, he made the partition and division, the estate in each county being divided separately among all the heirs as if there were no other estate to be divided. He allotted to the widow and the two children each an undivided one-third of all the land in San Mateo County; to the widow one-half, and to the children one-fourth each, of Mission Block No. 44, in

the city of San Francisco, each part being described by metes and bounds; to the widow, the southeasterly part of Mission Block No. 8, in the same city; to the children, each, one-half of Mission Block No. 2, in San Francisco, each part being described by metes and bounds; and to the widow, the whole of said fifty-vara lot, being $137\frac{1}{2}$ feet square. This report was confirmed on the 19th of April, 1875, the order of confirmation reciting, among other things, the appearance of Bates for the widow and of Sawyer as the attorney appointed to defend for the minor heirs.

Chapter X of the Code of Civil Procedure treats "of accounts rendered by executors and administrators, and of the payment of debts." Among the provisions in that chapter is one to the effect that if the account rendered by an executor or administrator "is for a final settlement, and the estate is ready for distribution and partition, the notice thereof required to be published must state these facts; and on confirmation of the final account, distribution and partition of the estate to all entitled thereto must be immediately had, without further notice or proceeding."

¨ The succeeding chapter relates to the "Partition, Distribution, and Final Settlement of Estates." By § 1665 it is provided that "upon the final settlement of the accounts of the executor or administrator, or at any subsequent time, upon the application of the executor or administrator, or of any heir, legatee, or devisee, the court must proceed to distribute the residue of the estate in the hands of the executor or administrator, if any, among the persons who by law are entitled thereto."

"Section 1666. In the order or decree the court must name the persons, and the proportions or parts to which each shall be entitled, and such persons may demand, sue for, and recover their respective shares from the executor or administrator, or any person having the same in possession. Such order or decree is conclusive as to the rights of heirs, legatees, or devisees, subject only to be reversed, set aside, or modified on appeal."

"Section 1668. The order or decree may be made on the

petition of the executor or administrator, or of any person interested in the estate. Notice of the application must be given by posting or publication, as the court may direct, and for such time as may be ordered. If partition be applied for as provided in this chapter the decree of distribution shall not divest the court of jurisdiction to order partition, unless the estate is finally closed."

" Section 1675. When the estate, real or personal, assigned by the decree of distribution to two or more heirs, devisees, or legatees, is in common and undivided, and the respective shares are not separated and distinguished, partition or distribution may be made by three disinterested persons, to be appointed commissioners for that purpose by the Probate Court or judge, who must be duly sworn to the faithful discharge of their duties. A certified copy of the order of their appointment, and of the order or decree assigning and distributing the estate, must be issued to them as their warrant, and their oath must be indorsed thereon. Upon consent of the parties, or when the court deems it proper and just, it is sufficient to appoint one commissioner only, who has the same authority, and is governed by the same rules as if three were appointed.

" Section 1676. Such partition may be ordered and had in the Probate Court on the petition of any person interested. But before commissioners are appointed, or partition ordered by the Probate Court, as directed in this chapter, notice thereof must be given to all persons interested, who reside in this State, or to their guardians, and to the agents, attorneys or guardians, if any in this State, of such as reside out of the State, either personally or by public notice, as the Probate Court may direct. The petition may be filed, attorneys, guardians, and agents appointed, and notice given at any time before the order or decree of distribution, but the commissioners must not be appointed until the order or decree is made distributing the estate.

" Section 1677. If the real estate is in different counties, the Probate Court may, if deemed proper, appoint commissioners for all, or different commissioners for each county. The estate in each county must be divided separately among the heirs.

devisees, or legatees, as if there was no other estate to be divided, but the commissioners first appointed must, unless otherwise directed by the Probate Court, make division of such real estate, wherever situated within this State.

"Section 1678. Partition or distribution of the real estate may be made as provided in this chapter, although some of the original heirs, legatees, or devisees may have conveyed their shares to other persons, and such shares must be assigned to the person holding the same, in the same manner as they otherwise would have been to such heirs, legatees, or devisees.

"Section 1679. When both distribution and partition are made, the several shares in the real and personal estate must be set out to each individual in proportion to his right, by metes and bounds, or description, so that, the same can be easily distinguished, unless two or more of the parties interested consent to have their shares set out so as to be held by them in common and undivided.

"Section 1680. When the real estate cannot be divided without prejudice or inconvenience to the owners, the Probate Court may assign the whole to one or more of the parties entitled to share therein, who will accept it, always preferring the males to the females, and among children preferring the elder to the younger. The parties accepting the whole must pay to the other parties interested their just proportion of the true value thereof, or secure the same to their satisfaction, or, in case of the minority of such party, then to the satisfaction of his guardian, and the true value of the estate must be ascertained and reported by the commissioners. When the commissioners appointed to make partition are of the opinion that the real estate cannot be divided without prejudice or inconvenience to the owners, they must so report to the court, and recommend that the whole be assigned as herein provided, and must find and report the true value of such real estate. On filing the report of the commissioners, and on making or securing the payment, as before provided, the court, if it appears just and proper, must confirm the report, and thereupon the assignment is complete, and the title to the whole of such real estate vests in the person to whom the same is so assigned.

"Section 1681. When any tract of land or tenement is of greater value than any one's share in the estate to be divided, and cannot be divided without injury to the same, it may be set off by the commissioners appointed to make partition to any of the parties who will accept it, giving preference as prescribed in the preceding section. The party accepting must pay or secure to the others such sums as the commissioners shall award to make the partition equal, and the commissioners must make their award accordingly; but such partition must not be established by the court until the sums awarded are paid to the parties entitled to the same, or secured to their satisfaction.

"Section 1682. When it appears to the court, from the commissioners' report, that it cannot otherwise be fairly divided, and should be sold, the court may order the sale of the whole or any part of the estate, real or personal, by the executor or administrator, or by a commissioner appointed for that purpose, and the proceeds distributed. The sale must be conducted, reported, and confirmed in the same manner and under the same requirements provided in Article IV, Chapter VII of this Title.

"Section 1683. Before any partition is made or any estate divided, as provided in this chapter, notice must be given to all persons interested in the partition, their guardians, agents, or attorneys, by the commissioners, of the time and place, when and where they shall proceed to make partition. The commissioners may take testimony, order surveys, and take such other steps as may be necessary to enable them to form a judgment upon the matters before them.

"Section 1684. The commissioners must report their proceedings, and the partition agreed upon by them, to the Probate Court, in writing, and the court may, for sufficient reasons, set aside the report and commit the same to the same commissioners, or appoint others; and when such report is finally confirmed, a certified copy of the judgment or decree of partition made thereon, attested by the clerk, under the seal of the court, must be recorded in the office of the recorder of the county where the land lies.

" Section 1685. When the Probate Court makes a judgment
or decree assigning the residue of any estate to one or more per-
sons. entitled to the same, it is not necessary to appoint com-
missioners to make partition or distribution thereof, unless
the parties to whom the. assignment is decreed, or some of
them, request that such partition be made.

" Section 1686. All questions as to advancements made, or
alleged to have been made, by the decedent to his heirs, may
be heard and determined by the Probate Court, and must be
specified in the decree assigning and distributing the estate ;
and the final judgment or decree of the Probate Court, or, in
case of appeal, of the Supreme Court, is binding on all parties
interested in the estate."

*Mr. J. C. Bates* and *Mr. John A. Campbell* for plaintiffs in
error.

The Constitution of 1863 was in force during the period
covering the probate partition proceedings impeached in this
case.

That Constitution provided for several courts, and declared
and conferred their several jurisdictions.

It is evident that a Probate Court is erected by § 8, Art.
VI, of that instrument, for each county, to consist of the
county judge sitting as a judge of probate.

The common law and equity jurisdiction is divided be-
tween the County Court sitting as a court of law of general
jurisdiction, and the District Court sitting as a court of gen-
eral law and equity jurisdiction.

The former is given jurisdiction of actions of forcible entry
and detainer, to prevent or abate nuisances, of special pro-
ceedings and cases, and such criminal jurisdiction as the leg-
islature shall prescribe.

The latter is given jurisdiction in all cases in equity, in all
cases at law involving the title or possession of real property
or the legality of any tax, etc., and in all other cases in which
the demand, exclusive of interest, or the value of the property
in controversy, amounts to $300.

The statute, authorizing the partition proceedings had in this case by the Probate Court, can only be valid on the assumption that the Constitution has either expressly vested jurisdiction over partition proceedings in the Probate Court, or has authorized the legislature to do so. The legislature cannot enlarge the jurisdiction of a constitutional court; *Cameron* v. *Kenfield*, 57 Cal. 550; or vest in another court that jurisdiction which the Constitution has placed in one designated therein. *Zander* v. *Coe*, 5 Cal. 230; *Appeal of S. O. Houghton*, 42 Cal. 35; *Will of Bowen*, 34 Cal. 682; *Willis* v. *Farley*, 24 Cal. 490; *Wilson* v. *Roach*, 4 Cal. 362; *Rosenberg* v. *Frank*, 58 Cal. 387.

The Constitution has vested jurisdiction over partition proceedings in the District Court as a court of equity by virtue of the grant of jurisdiction " in all cases in equity " where the remedy is sought in equity; and as a court of law, under the jurisdiction given of all cases at law which involve the title or possession of real property; where the remedy is sought in partition proceedings at law. This jurisdiction is thus vested because partition proceedings under the settled principles of our jurisprudence, in the light of which the Constitution speaks, are proceedings in equity or at law, and are cases in equity or at law according as the one forum or the other is sought.

Actions at law for partition existed *at the common law* in the case of Parceners prior to the reign of Henry VIII, and in that reign the right to a writ of partition was given to tenants in common. 1 Washburn Real Prop. c. 13, § 7; 1 Spence Eq. Jur. 162; Freeman, Co-tenancy and Partition, § 420.

*Courts of equity.* assumed a jurisdiction over partition proceedings based not upon statute, but upon the inadequacy of the legal remedy. 1 Spence Eq. Jur. 642, 653, 654; Freeman, Co-tenancy and Partition, § 423.

Partition jurisdiction, being a twofold jurisdiction, one at law, the other in equity, conferred by the Constitution upon the District Court, such jurisdiction was exclusive in that court. It could not be vested by the legislature, either as a concurrent or an exclusive jurisdiction in another court, unless

authority to that effect was given expressly or by necessary implication by the Constitution.

The grant of probate jurisdiction is in these words: "The county judges shall also hold in their several counties Probate Court, and perform such duties as probate judges as may be prescribed by law." If partition jurisdiction is or may be vested in the Probate Court, it must be either because the last clause, "as may be prescribed by law," empowers the legislature to impress a jurisdiction properly at law or in equity with a probate character, and thereupon vest it in the Probate Court, or, in other words, to vest in the Probate Court other than strictly probate jurisdiction; or because probate jurisdiction, either as received from the English law or as remodelled in America, includes a limited partition jurisdiction as a part and incident thereof. Neither position is tenable.

In *Rosenberg* v. *Frank*, 58 Cal. 402, the court said: "It seems from the above [Art. VI, § 8, Cal. Const.] that the legislature may make the jurisdiction of the probate judge or court what it pleases, within the limits of that jurisdiction which is understood as usually pertaining to Probate Courts. But the position that it can, under this power, take away from the District Courts any of the equity jurisdiction conferred on them by the Constitution, is manifestly untenable."

Similar clauses have been construed as not empowering the legislature to extend the powers of a Probate Court beyond the proper and established bounds of the established probate jurisdiction, as known to American and English jurisprudence. *Ferris* v. *Higley*, 20 Wall. 373; *Cast* v. *Cast*, 1 Utah, 112; *Locknane* v. *Martin*, McCahon (Kan.), 60; *Moore* v. *Koubly*, 1 Idaho, 54. The construction is rational.

The conclusion is irresistible from the foregoing considerations, that § 8 of Art. VI authorizes the legislature to confer on the Probate Court *probate powers and jurisdiction* and those only. Unless the power to partition among heirs is a probate power, and the jurisdiction over partition proceedings is a part of the probate jurisdiction recognized in the Anglo-American jurisprudence, the provisions of the statute and code

for partition by the Probate Court were void, and the partition proceedings, under which the defendant in this action claims, were *coram non judice* and absolutely void.

Partition is not a part of the probate jurisdiction derived from England and exercised in America by Probate or Surrogate Courts.

The Probate and Surrogate Courts in America are the lineal successors of the ecclesiastical courts of Great Britain. *Payne's Will*, 4 T. B. Mon. 423.

Our state constitutions recognize three civil jurisdictions, derived from the jurisprudence of England: law, equity and probate, and distribute them to the several tribunals. To the limits of these several jurisdictions, as exercised by the several judicatories of England, our courts look for the boundaries of the judications deposited by our organic laws in the several state courts. The jurisdiction of the ecclesiastical courts was exercised, with certain exceptions immaterial for the purpose of this head, over the personal estate only. Toller's Executors, 67, 80. The mere distribution or declaration of the rights of the next of kin to the undisposed-of residue in the case of intestacy, and the enforcement of the surrender by the administrator, an officer of the court, to the kin of that residue, was the extent of the power exercised by the ecclesiastical courts.

The partition of that residue was left to the voluntary action of the kin, or to their coerced action in obedience to the decree of a court of law or equity.

Although there is a seeming appropriateness in the exercise of a limited power of partition by the Probate Court, and although on a superficial view, such a power appears to be analogous to, and a legitimate extension of the process of distribution, yet neither position is true. The inappropriateness of the exercise of such a power becomes more apparent when the incongruous and alien nature of that portion of the activity of a Probate Court has been demonstrated and illustrated. Partition is not analogous to and is not a legitimate extension of the process of distribution. This proposition is based upon the distinction between partition and probate proceedings in natures, object and operation. This distinction is twofold.

1. Briefly stated, the object of administration is not to enforce a remedial right, or to transfer property. Its exclusive purpose and operation is to manage the estate as in receivership for the payment of debts and to announce authoritatively a legal succession. No proceeding of the former description properly belongs to administration. Partition involves an enforcement by the judicial decree of a remedial right and the motion of property rights *inter vivos*.

2. Administration has exclusively to do with rights which spring from the succession, *i.e.*, out of the fact and process of inheritance. When the Probate Court deals with other rights, it departs from its legitimate conventional and customary sphere, and overleaps the boundaries of its jurisdiction.

This character of the probate jurisdiction runs through the entire Anglo-American jurisprudence.

The jurisdiction is a jurisdiction of management over an undisputed fund in the custody of the court for administration purposes, — to wit, for the payment of debts and for the support of the family during administration. The moment activities diverging from this narrow thread of function are required, the domain of a diverse jurisdiction, not a jurisdiction of management but a remedial jurisdiction, must be entered.

The Probate Court can appoint an executor or administrator, and direct him, by successive orders extending to the close of the administration, to collect assets, to sell property, to pay debts, to apply so much of the funds in his hands as shall be necessary to defray funeral expenses and to support the family and to protect the fund, and finally direct him to deliver so much of the funds as shall be necessary in satisfaction of legacies and to surrender the residue to the heirs.

All activities outside this narrow channel, bounded in the beginning by the death and at the end by the distribution, and laterally by the limits of management, belong to law or equity. And the test of the new province, and of the externality from the terminal or lateral boundaries of the probate jurisdiction, is the question whether those activities involve adversary litigation involving remedial rights and issuing in judgments enforcing such rights by the transfer of property.

The proceedings in a Probate Court, preceding distribution, are not in any particular adversary proceedings, involving the assertion of a remedial right, and issuing in a judgment accomplishing a transfer of property rights. The decree of distribution is equally devoid of that character. It neither gives, creates, nor transfers any rights of property.

The proceedings resulting in the decree are in the nature of an inquisition to ascertain who are the persons upon whom the law has cast the succession and to what interests. The decree, when pronounced, is simply declaratory. It announces what rights were given at the death by the law, and to whom: It is a declaration which concludes all parties to the proceeding. But it does not purport, and in theory of law does not create or transfer any rights. If in practice it thus operates, it is in consequence of error in the exercise of jurisdiction.

Partition, on the contrary, is essentially an adversary proceeding in which a remedial right to the transfer of property is asserted, and a proceeding issuing in a judgment amoving or transferring that property.

Where partition by judicial proceedings is had between two tenants in common, an interchange of property rights is accomplished by the judgment. The right of possession to one moiety of the lands by metes and bounds is divested from one tenant and transferred to the other. He is compelled to accept, as a substitute, the right of possession theretofore belonging to the other tenant to the moiety by metes and bounds assigned to him. The property of which he is divested is the title and right of possession of a tract of land awarded to the other, together with the incident rights, the right of entry, the right of user, the right to maintain trespass, etc. The proceeding is strictly analogous to a proceeding in equity, to compel the specific performance of a contract to exchange land. The contract of exchange being established, the law gives a remedial right to each party to the reciprocal exchange of the titles and rights of possession of the respective parcels of land. The judgment *ex proprio vigore* (under the laws of some States), or as executed, accomplishes the transfer.

In partition, the fact of the tenancy being established, the

law gives a remedial right to the reciprocal exchange of the right of possession with the incident rights, to several distinct, moieties of the entire tract and of the title to undivided moieties of such moieties. The judgment accomplishes the change.

But there are two matters of law which establish beyond possible question or cavil, that in partition, property consisting both of title and right of possession is and must be transferred by the judgment in possession.

(1) This results from the fact that at common law partition could not be accomplished without the transfer of an estate by the voluntary act of the parties. And the judicial proceeding is a compulsory transfer by and through the judgment of a court, substituted for the voluntary process by the parties.

(2) That partition involves the transfer of an estate or property is evidenced by the theory and foundation of the proceeding in equity to compel the specific performance of a parol partition.

The statute of frauds is satisfied by the part performance accomplished by the actual severance of possession. Equity will treat each tenant as possessed of the legal title to one-half of his allotment and of the equitable title to the other half of the same, and will compel a conveyance by the cotenant. This proceeds exclusively on the theory that each tenant in common can have a title to one-half only, of any specified parcel of the whole tract, and can only acquire the other half through the medium of a conveyance. Freeman Cotenantry and Partition, § 402 and cases cited.

Administration has exclusively to do with rights which spring out of the fact of succession. When it deals with other rights, it departs from its legitimate, conventional and customary sphere.

Partition deals with a remedial right springing out of the nature of the property and attaching thereto under a law other than that of succession.

The exercise of a power of partition by the Probate Court is in no sense appropriate. It is an incongruous and alien activity as established by the foregoing discussion. It is also

inappropriate by reason of the inadequate powers of that court. The Probate Court can only partition the legal interest cast. It can determine no other title. It cannot adjust, as can equity, the equities between the parties; making provisions for liens and incumbrances and variant values in different parcels of the property.

The Probate Court exercises, under our law, more extensive powers in the administration of estates than did the ecclesiastical courts of England. For instance; American courts, under statute authority, take jurisdiction of wills of real estate, and in all cases, whether of testacy or intestacy, land is assets to be administered upon. Yet no such powers were exercised by the ecclesiastical courts. American courts render decrees of distribution in cases of testacy as well as of intestacy, yet the ecclesiastical courts could render no such decree except in case of intestacy. The American Probate Courts exercise also, by authority of statute, more enlarged powers in the direction and control of executors and administrators.

In none of these cases is more done by the legislature than to grant to a tribunal, whose powers are strictly dependent upon statute, more extended powers within its legitimate domain. So long as the powers granted consist in nothing more than powers over its officers and the estate in its custody for administration, or in powers to announce judicially the course of succession, the bounds of its legitimate jurisdiction are not passed. The moment the court is given power to entertain proceedings to enforce remedial rights, and to render judgments amoving, or, when executed, accomplishing the amotion of property, that moment the boundaries of its jurisdiction are passed.

Wherever partition powers are or have been exercised by Probate Courts, in the United States, it has been by express authority of statute and as an alien power in the Probate Court.

Had a limited partition power been generally exercised by Probate Courts in the United States, as an incident of distribution in the absence of statutory authorization, this fact might warrant the inference, that in the opinion of the bench and

bar of America, such power belonged to the immemorial probate jurisdiction. But where the power is exclusively statutory and so recognized wherever exercised, the fact of its exercise has no tendency to establish that it is a legitimate part of probate jurisdiction.

The power exercised by Probate Courts to partition, wherever it exists is based on statute. ALABAMA: see Toulman's Digest of the Laws of Alabama, 1823, 333, § 43; Ala. Code, 1852, § 670; Rev. Code Ala. 1867, § 3105; *Bryant* v. *Stearns*, 16 Ala. 302; *Coker* v. *Pitts*, 37 Ala. 692. CONNECTICUT: see Public Statute Laws of Conn. 1838, 234, Tit. 31, c. 1, § 29; Statutes of Conn. 1854, 502, § 53; *Gates* v. *Treat*, 17 Conn. 388. INDIANA: see Rev. Stat. 1843, 811, 812, §§ 114, 115, 116; Rev. St. Ind. 1881, §§ 1186, 1187; *Shull* v. *Kennon*, 12 Ind. 34; *Bennet* v. *East*, 7 Ind. 174. LOUISIANA: see *Hooke* v. *Hooke*, 6 La. O. S. 569 (420). MAINE: see 1 Smith's Laws of Maine, 239, c. 50, §§ 31, 38; Rev. Stat. Maine, 1840–41, 449, c. 108, § 1; Rev. Stat. 1883, 550, §§ 8, 9; *Earl* v. *Rowe*, 35 Maine, 414; *S. C.* 58 Am. Dec. 714. MASSACHUSETTS: see Provincial Stat. Mass. c. 13, Jan. 5, 1753, Ancient Charter, 594; Stat. Mass. 1817, c. 190; Gen. Stat. Mass. 1860, 490, §§ 14, 48, 65. "All the authority which the judge of probate has, upon this subject, is derived from the statute of 1817, c. 190;" *per* Wilde, J., in *Wainright* v. *Dorr*, 13 Pick. 333; *Arms* v. *Lyman*, 5 Pick. 210; *Sigourney* v. *Sibley*, 22 Pick. 507; *S. C.* 33 Am. Dec. 762; *Bemis* v. *Stearns*, 16 Mass. 200; *Jenks* v. *Howland*, 3 Gray, 536; *Gordon* v. *Pearson*, 1 Mass. 323. MISSISSIPPI: see Statutes of Miss. (Howard and Hutchinson's), 1840, 412, § 89, 471, § 14; *Smith* v. *Craig*, 10 Sm. & Marsh. 447; *Currie* v. *Stewart*, 26 Mississippi, 649; *Lum* v. *Reed*, 53 Mississippi, 73. NEW HAMPSHIRE: see Comp. Stat. N. H. (ed. 1853) 393, § 6; *Wadleigh* v. *Janvreen*, 41 N. H. 503; *S. C.* 77 Am. Dec. 780. NEW JERSEY: see Revised Laws of N. J. 1821, 780, § 13; Nixon's Dig. Laws of N. J. 668, § 10; *Den ex dem Richman* v. *Baldwin*, 1 Zabriskie (21 N. J. Law), 395; *Curtis* v. *Jenkins*, Spencer (20 N. J. Law), 679. PENNSYLVANIA: see 1 Brightly's Purdon's Dig. Laws of Penn. 1700–1872, 433, § 138; *Bishop's Appeal*, 7 W. & S. 251; *Selfridge's Appeal*, 9 W. & S. 55;

*Waln's Appeal,* 4 Penn. St. 502. TENNESSEE: The County Court has jurisdiction of the probate wills; Code Tenn. 1858, § 2169; Stat. Tenn. 1831, Heywood and Cobb's Revision, 103, § 47. The County, Circuit, and Chancery Courts have concurrent jurisdiction. Statutes Tenn. 1831, Revision, Heywood and Cobbs, 244; Tenn. Code, 1858, § 3266; *Wilcox* v. *Cannon,* 1 Coldwell, 379. VERMONT: Laws of Vermont, down to 1824, 349, 350, §§ 79, 83; Rev. Laws Vermont, 1880, §§ 2252–2260; *Grice* v. *Randall,* 23 Vt. 239. WISCONSIN: Rev. Stat. Wis. 1849, 380–1–2; Rev. Stat. Wis. 1858, 605–6–7; Rev. Stat. Wis. 1878, §§ 3942–3955. MINNESOTA: Stat. of Minn. 1851, 260, § 5; Stat. of Minn. 1878, 597, § 6. SOUTH CAROLINA: 11 Stat. S. C. 44, § 26; 6 Stat. S. C. 248; Rev. Stat. S. C. (1872) 573, § 41; *Faust* v. *Bailey,* 5 Rich. (S. C. Law) 107; *Davenport* v. *Caldwell,* 10 S. C. 317; *Gates* v. *Irick,* 2 Rich. (S. C. Law), 593.

It is recognized in all the cases, as of statutory origin. In none are there any suggestions that it is an original or legitimate element or incident of administration.

Whenever the question of its relation to the latter jurisdiction has been noticed, it has been noticed as something foreign thereto, and as an alien jurisdiction conferred upon the Probate Court in consequence of some local views of convenience. *Currie* v. *Stewart, ubi supra; Davenport* v. *Caldwell, ubi supra; Smith* v. *Craig, ubi supra; Wainwright* v. *Dorr, ubi supra; Grice* v. *Randall, ubi supra.* The sole question in this case is, were the proceedings in partition in the Probate Court of San Francisco without jurisdiction? Of course, if the court has jurisdiction of the proceedings and the persons, whether it be a court of inferior or general jurisdiction, the decision of the Probate Court is conclusive except on appeal. The cases cited on behalf of the defendant in error all proceed on the assumption that the Probate Court had jurisdiction in the States in question, and the presumption was correct. In this case and in California the contention is that the Probate Court had no jurisdiction; that the proceedings were absolutely void and not merely voidable; and it is an elementary principle that such proceedings are nullities and subject to collateral as well as direct attack.

In the absence of a constitutional distribution of jurisdictions, and in the absence of an express or necessarily implied prohibition, it is beyond doubt, that the legislature can vest a particular jurisdiction in any court it may appoint.  For the purpose, therefore, of determining the constitutionality of the California statute, a distinction must be taken between the decisions of those States where such constitutional distributions of jurisdictions and prohibitions exist and of those States where they do not.   The legislation, practice, and decisions of the latter must be laid aside.

It is argued that the statute simply brings into this State the practice and usage in the matter of partition by Probate Courts which generally prevail in other States.   It is urged by inference that the constitution, in providing probate jurisdiction in the Probate Court, contemplated that jurisdiction, not in its purity and simplicity as derived from Great Britain, but as amplified in America.   It is supposed that the jurisdiction in question has been remodelled in America by the practice of the States, and partition power incorporated into it, and that the state constitution speaks with reference to that American probate jurisdiction.

But to adopt such a principle is to violate all the rules of construction to enable the significance of constitutional provisions to vary with variable custom, and to enable a judicial remodelling, according to the whim of the times, of our constitutions, destructive of the rigidity and integrity of our constitutional framework of government.   It is not true that there is an American probate jurisdiction different in essential quality and nature from that of the courts of administration of England.   It is true that a partition power has been expressly conferred upon Probate Courts in certain States; but this has not been done in all, and, in fact, has been done in less than a majority.

Such a power has been so conferred in Maine, Massachusetts, Connecticut, Vermont, Pennsylvania, New Hampshire, New Jersey, Alabama, Rhode Island, Indiana, Ohio, and Tennessee.

In Mississippi the court, by virtue of its constitutional juris-

diction over orphans' business, can partition an estate where some of the tenants in common are minors.

, In Texas and Louisiana, the same court has constitutional jurisdiction over matters at law and in equity and of administration.

In Kentucky and North Carolina the same court is a court of law and equity and a Court of Probate, but the partition power is not given to it as a Probate Court.

In South Carolina, although up to 1874 the Probate Court had a statutory partition power, yet it is held that such power is not a part of the probate jurisdiction.

But no such power has been conferred upon the Probate Court in New York, Virginia, West Virginia, Georgia, Florida, Missouri, Iowa, Illinois, Arkansas, Kansas, Nebraska, Colorado, and Maryland. In the latter State jurisdiction to partition the estates of decedents was given to the county courts by the statute of November, 1786, c. 45, § 8; while under the act of February, 1777, § 8, the orphans' court had exclusive probate jurisdiction. This distinction continues at the present time. Revised Code, Maryland, 1878, 430–432 and 407–8.

On no assumption can it be maintained, as a matter of law, that the power of partition was a part of the probate jurisdiction, which it was competent for the legislature to vest in Probate Courts under the California Constitution of 1863.

That power was indisputably no part of the probate jurisdiction derived from England.

Wherever the question has been decided, the American courts have pronounced it no part of the probate jurisdiction, as specified by the constitutions.

On principle, it belongs to the jurisdictions at law and in equity, and not to probate.

Wherever such a power has been exercised in America, by Probate Courts, it has been by virtue of express statute, and in all such cases the constitutional power to enact such statutes existed in the legislature, by reason of the absence of express or implied constitutional prohibitions.

On no substantial principle can the Constitution of California be made to speak with reference to the variant practice of

a minority of the States, so as to make the probate jurisdiction conferred by that Constitution comprehend that statutory power of partition deposited in Probate Courts in those States.

The counsel further contended: (1) that the administratrix was not a competent party to prosecute a suit for the partition of the real property, which had descended to the heirs at law, and was in the possession of the heirs at the time when the consent order of the two attorneys and of the court was adopted; (2) that the order made, appointing the commissioner, had no validity; (3) that the minor heirs had not been served with any process, directly, nor by service upon a general guardian or a guardian *ad litem;* (4) that the Probate Court had no authority to appoint an attorney of the court to represent these parties in this cause, nor to bind them by any agreement he should make; (5) that the Court of Probate did not acquire jurisdiction over the persons of these plaintiffs.

*Mr. Samuel M. Wilson* for defendant in error.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

The principal assignment of error is, that, under the Constitution of California prior to 1880, the Probate Court could not take jurisdiction of a proceeding to partition real estate. It is contended that its control over the estate ceased when it approved the final settlement, and, by a decree of distribution, defined the nature and extent of the interests of the heirs in the remaining estate of the decedent. A partition severing the unity of possession among the heirs, and investing each with a right, as against the others, to the exclusive possession and ownership of distinct parts of the estate, could not, it is insisted, have been constitutionally effected by proceedings in a Probate Court. These questions have received the most careful consideration, as well because of their intrinsic importance, as because their determination by this court, as we are informed by counsel, may seriously affect the title to large bodies of land in California.

Tracing the course of legislation in California in reference to the jurisdiction and powers of the Probate Courts of that State, we find that the first statute upon the subject is that of April 22, 1850, entitled " An Act to regulate the Settlement of the Estates of Deceased Persons." Stat. California, 1850–53, c. 129, p. 377. Another statute was passed May 1, 1851, having a similar title, and covering the same subject. Compiled Laws California 1850, c. 120, pp. 377 to 423. The provisions of these statutes relating to proceedings in the Probate Courts' for the final settlement, distribution, and partition of estates were continued without material change, and the powers of those courts enlarged, by the Code of Civil Procedure. The sections of the code bearing upon the question of the jurisdiction and powers of those courts are too numerous to be incorporated in this opinion. It is sufficient to say that upon a careful examination of them, we are of opinion that it was the intention of the legislature to invest Probate Courts with authority, in connection with, and as ancillary or supplementary to, the settlement and distribution of estates, to make partition of real property — where the title of the deceased owner and the heirship of the parties are undisputed — so as to invest each heir with a separate title to the particular part or parts allotted to him by the decree of partition. No other interpretation is consistent with the words of the code. §§ 1581, 1634, 1665, 1666, 1668, 1675, 1676 to 1686, inclusive.

Does the state constitution prohibit the partition of real estate by proceedings in a Probate Court? The contention of the plaintiffs is, that exclusive original jurisdiction of such proceedings is given to District Courts, and that partition is foreign to the probate system as recognized in that instrument.

By the constitution of California, in force at the time partition was made of the estate in question, the judicial power of the State was " vested in a Supreme Court, in District Courts, in County Courts, in Probate Courts, and in justices of the peace, and in such Recorders' and other inferior courts as the legislature may establish in any incorporated city or town;" and the Supreme Court, the District, County, Probate, and

such other courts as the legislature should prescribe, were declared to be courts of record. Const. of 1849, amended in 1862, Art. VI, §§ 1, 9. The Supreme Court is invested with appellate jurisdiction in all cases in equity; in all cases at law involving the title or possession of real estate, or the legality of any tax, impost, assessment, toll or municipal fine, or in which the demand, exclusive of interest, or the value of the property in controversy, amounts to three hundred dollars; in all cases arising in the Probate Courts; and in all criminal cases amounting to felony, on questions of law. It also has "power to issue writs of mandamus, certiorari, prohibition, and *habeas corpus*, and also all writs necessary or proper to the complete exercise of its appellate jurisdiction." Id. § 4.

The constitution of 1849 provided that the District Courts "shall have original jurisdiction in law and equity in all civil cases where the amount in dispute exceeds two hundred dollars, exclusive of interest. In all criminal cases not otherwise provided for, and in all issues of fact joined in the Probate Courts, their jurisdiction shall be unlimited." Const. 1849, Art. VI, § 6. But in 1862 the constitution was amended, and in lieu of that section the following was substituted: "The District Courts shall have original jurisdiction in all cases in equity; also, in all cases at law which involve the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine, and in all other cases in which the demand, exclusive of interest or the value of the property in controversy, amounts to three hundred dollars; and also in all criminal cases not otherwise provided for. The District Courts and their judges shall have power to issue writs of *habeas corpus*, on petition by or on behalf of any person held in actual custody, in their respective districts." Const. 1862, Art. VI, § 6.

The constitution of 1849, also, provided for the election of a county judge in each organized county, who "shall hold the County Court, and perform the duties of surrogate or probate judge," and, with two justices of the peace, "shall hold Courts of Sessions, with such criminal jurisdiction as the legislature shall prescribe; and he shall perform such other duties as

shall be required by law." It was further provided that "the County Courts shall have such jurisdiction in cases arising in justices' courts, and in special cases, as the legislature may prescribe, but shall have no original civil jurisdiction except in such special cases." Const. 1849, Art. VI, §§ 8 and 9. But by the amendments of 1862 the powers and jurisdiction of County Courts were greatly enlarged, as will be seen from the following section adopted in lieu of those just cited: "Section 8. The County Courts shall have original jurisdiction of actions of forcible entry and detainer, of proceedings in insolvency, of actions to prevent or abate a nuisance, and of all such special cases and proceedings as are not otherwise provided for; and also such criminal jurisdiction as the legislature may prescribe; they shall also have appellate jurisdiction in all cases arising in courts held by justices of the peace and recorders, and in such inferior courts as may be established in pursuance of section one of this article, in their respective counties. The county judges shall also hold in their several counties Probate Courts, and perform such duties as probate judges as may be prescribed by law. The county courts and their judges shall also have power to issue writs of *habeas corpus*, on petition by or on behalf of any person in actual custody in their respective counties."

The argument in behalf of the plaintiffs, briefly stated, is, that the legislature could not confer upon County Courts jurisdiction of suits or matters of which original jurisdiction is given by the constitution to District Courts; that whether a proceeding for partition be regarded as a case in equity, or a case at law involving the title or possession of real property, it is within the original, and, therefore, exclusive jurisdiction of a District Court; and that the provision requiring county judges to hold "Probate Courts," "and perform such duties as probate judges as may be prescribed by law," did not authorize the legislature to invest Probate Courts with jurisdiction, concurrent with District Courts, in cases of which the latter were, by express words, given original jurisdiction. It must be confessed that some support for this position is found in the general language employed in *Zander* v. *Coe*, 5

California, 230, *People* v. *Fowler*, 9 California, 85, and *Caulfield* v. *Stevens*, 28 California, 118. In *Zander* v. *Coe*, the court proceeded upon the ground that the legislature could not confer on one court the functions and powers which had been conferred by the constitution upon another court. In *People* v. *Fowler*, 9 California, 85 — where the question was as to the constitutionality of a statute giving an appeal to the Court of Sessions from a judgment in a criminal case tried in a justice's court — the court, referring to *Zander* v. *Coe*, and previous cases, said: " The rule of construction established by these decisions is this: That when certain powers are, in *form affirmatively*, bestowed upon certain courts, they are still *exclusive*, unless there be some exception specified in the constitution itself, or the power to prescribe the cases to which the jurisdiction should extend be expressly given to the legislature. For example: there is affirmatively conferred upon the District Courts certain original jurisdiction in civil cases, and there is no specified exception stated, and no power expressly given to the legislature either to limit or increase this jurisdiction; therefore it is, as to the class of cases enumerated, *exclusive*."

In *Caulfield* v. *Stevens*, 28 California, 118, the court declared to be unconstitutional an act empowering justices of the peace to try actions for forcible entry, or forcible or unlawful detainer. Its validity was attempted to be maintained under the general grant to the legislature of power to fix by law the " powers, duties, and responsibilities " of justices of the peace. Const. 1862, Art. VI, § 9. But the court held that the subject of forcible entries and of forcible and unlawful detainers was expressly committed by the constitution to County Courts, and that the act there in question was unconstitutional. Whether the court had in view the rule of constitutional construction announced in *Zander* v. *Coe* and *People* v. *Fowler*, it is impossible to say; for no reference is made to either case. As pointed out in *Courtwright* v. *Bear River &c. Mining Co.*, 30 California, 573, the decision in *Caulfield* v. *Stevens* went beyond what was necessary to be decided; it might have been rested entirely upon the ground that the constitution in terms

invested County Courts, declared to be courts of record, with original jurisdiction of actions of forcible entry and detainer, and the authority of the legislature to fix by law the powers, duties, and responsibilities of justices of the peace was burdened with the condition that "such powers shall not, in any case, trench upon the jurisdiction of the several courts of record." Section 9.

Prior to *Caulfield* v. *Stevens*, there were two decisions in the state court which seem to rest upon a different rule of constitutional construction, *Estate of De Castro* v. *Barry*, 18 California, 96, and *Perry* v. *Ames*, 26 California, 372, 382. The first one was a suit for partition. It was brought in a Probate Court under § 264 of the Probate Act of 1851, (Compiled Laws of California, 1850–3, p. 415,) providing that "partition of the real estate may be made as provided in this chapter, although some of the original heirs or devisees may have conveyed their shares to other persons, and such shares shall be assigned to the person holding the same, in the same manner as they otherwise should have been to such heirs or devisees." That section — the words "or distribution" being added after "partition," and "legatees" after "heirs" — is incorporated into the Code of Civil Procedure, § 1678. In that case the point was made that the Probate Court had no jurisdiction, because the petitioners were not heirs or devisees, and, therefore, not entitled to sue in the form adopted. But the jurisdiction of the Probate Court was sustained, on the ground that the statute placed alienees upon the same footing as the original heirs or devisees. While the authority of the Probate Court was not assailed upon the ground now asserted — namely, that the court could not, under the Constitution, entertain jurisdiction of a suit for partition — that question was necessarily involved in the case; and the decree, which was affirmed, should have been reversed, if it be true that the jurisdiction of the Probate Court, in cases of partition, could not be made concurrent with that of the District Courts. In *Perry* v. *Ames*, the question was as to the jurisdiction of District Courts, under the State Constitution as amended in 1862, in cases of mandamus. It was contended that the Supreme

Court alone could issue a writ of mandamus, because upon that court had been conferred, in terms, power "to issue writs of mandamus, certiorari, prohibition, and habeas corpus, and also all writs necessary or proper to the complete exercise of its appellate jurisdiction," while no such power was expressly conferred upon the District Courts. It was decided that although the Supreme Court had been invested, in terms, with original jurisdiction in cases of mandamus, the District Courts had the same power, in respect to that species of remedy, by virtue of the general grant to them of jurisdiction in all civil cases in equity and in certain specified cases at law.

But the fullest discussion as to the general question is to be found in *Courtwright* v. *Bear River, &c. Mining Co.*, above cited. The principal point there was, whether a District Court could take jurisdiction of an action in equity to abate a nuisance. The latter court held that it could not, for the reason that original jurisdiction of an action to prevent or abate a nuisance is expressly granted to County Courts. Art. VI, § 8. But it was adjudged by the Supreme Court of the State that the jurisdiction of County Courts of such actions, was only concurrent with that of District Courts — the latter having original jurisdiction of suits to abate nuisances under the general grant to them of jurisdiction in cases in equity. It was held, that while the Constitution expressly provides that the powers conferred upon justices of the peace "shall not in any case trench upon the jurisdiction of the several courts of record" — thereby indicating that the jurisdiction conferred upon the several courts of record should be exclusive as against justices of the peace — no analogous provision was made as between the courts of record; and that, consequently, the Constitution did not forbid the Legislature from investing courts of record of the same order and grade with equal authority over any given cause or subject-matter of litigation. The court, also, said that "the cases are numerous which stand opposed to or are inconsistent with the idea of the complete distribution by the Constitution of judicial power among the several courts, and of their exclusive jurisdiction of all the subject-matters committed to them." "There are many mat-

ters," it observed, by way of illustration, "that we need not pause to specify, that would usually and properly pertain to the court exercising probate powers, as involved in the settlement of the estates of deceased persons, that may form the subject-matters of suits in equity and be properly litigated in the District Court." It referred to *Perry* v. *Ames* as sustaining the theory of concurrent jurisdiction, and pronounced that doctrine to be correct. It further said that the *dictum* in *Caulfield* v. *Stevens* must yield to the decision in *Perry* v. *Ames*.

The doctrine of this case, upon the question of the concurrent jurisdiction of District and Probate Courts of actions in equity to abate nuisances, was reaffirmed in *Yolo County* v. *City of Sacramento*, 36 California, 193, 195.

The latest decision in the state court, to which our attention is called, which bears directly on the question of jurisdiction, is *Rosenberg* v. *Frank*, 58 California, 387, 402. In that case will be found some material qualification of the general language used in previous cases. That was a suit in equity, brought by executors in a District Court, for the purpose of obtaining a construction of a will. It was suggested that the Probate Court had jurisdiction of the subject-matter of the cause, and that its jurisdiction was, for that reason, exclusive. The court, adhering to the rule announced in the *Courtwright* case, held the authority of the District Court to be ample and plenary, under the grant to it of original jurisdiction in cases in equity. After stating that the jurisdiction of Probate Courts is not defined in the Constitution, and referring to the provision that county judges shall "perform such duties as probate judges as may be prescribed by law," the court said: "It seems from the above that the legislature may make the jurisdiction of the probate judge or court what it pleases, within the limits of that jurisdiction which is understood as usually pertaining to Probate Courts." As late as *Burroughs* v. *De Couts*, 70 California, 361, 371, the court said: "Both Burroughs and Seamens are estopped by the decree of partition in probate from setting up title derived from Soto adverse to that of their co-tenants under the same title" — citing Code

of Civil Procedure, § 1908; Freeman on Cotenancy and Partition, § 530–32; and Freeman on Judgments, § 249.

Whether it is to be fairly deduced from the broad language in previous decisions, that the legislature may confer upon Probate Courts concurrent jurisdiction as to every matter embraced within the grant of original jurisdiction to the District Courts, is a question which need not be now decided. It is only necessary to accept the decision in *Rosenberg* v. *Frank*, as furnishing the constitutional test for determining the extent of the jurisdiction with which the Probate Courts of California may be endowed. The question, therefore, is, whether, after the final settlement of the accounts of a personal representative, and after a decree of distribution, defining the undivided interests of heirs in real estate in the hands of such representative — neither the title of the decedent nor the fact of heirship being disputed — the partition of such estate among the heirs, so as to invest them, separately, with the exclusive possession and ownership, as against co-heirs, of distinct parcels of such realty, is a subject-matter which may be committed to Probate Courts according to the jurisdiction usually pertaining to those tribunals.

We lay aside, as not open to dispute, the proposition that there is a difference between distribution and partition. And we are satisfied that that difference was in the mind of the legislature when it passed the original Probate Act, as well as when the Code of Civil Procedure was adopted. As correctly observed by counsel, distribution neither gives a new title to property, nor transfers a distinct right in the estate of the deceased owner, but is simply declaratory as to the persons upon whom the law casts the succession, and the extent of their respective interests; while partition, in most, if not in all, of its aspects, is an adversary proceeding, in which a remedial right to the transfer of property is asserted, and resulting in a decree which, either *ex proprio vigore* or as executed, accomplishes such transfer. But this difference is not sufficient in itself, to solve the inquiry as to whether partition is so far alien to the probate system, as recognized by the Constitution of California, that the power to make it could

not be conferred upon Probate Courts; for, according to the doctrine of *Rosenberg* v. *Frank,* those tribunals may exercise whatever powers the legislature may, in its discretion, confer upon them, within the limits of such jurisdiction as usually pertains to Probate, Courts. If, at the time the Constitution of California was adopted, the partition, by Probate Courts, among the heirs of a decedent, of undivided real estate, was unknown in the jurisprudence of this country, there would be ground, under the doctrine of *Rosenberg* v. *Frank,* to contend that no such jurisdiction could be conferred upon Probate Courts in that State. But such is not the case. In a large number of the States, as the citations by counsel of statutes and decisions show, Probate Courts were, and are, invested with power to make partition, among heirs or devisees, of estates coming within their cognizance for settlement and distribution. 1 Washburn's Real Property, 718, Bk. I, c. 13, § 7: Freeman's Cotenancy and Partition, § 550, 2d ed. The significance of this fact is not materially weakened by the circumstance that, generally, where the power of partition is or has been exercised in this country by Probate Courts, it has been by express authority of statutes which were not forbidden by constitutional provisions. The existence of such statutes, in many of the States, precludes the idea, so strongly pressed by plaintiffs' counsel, that, when the Constitution of California was adopted, partition was foreign to the probate system, as administered in this country. Such legislation, we suppose, has its origin in the belief that it is convenient, if not desirable, for all concerned in the estate of a decedent, that the same court, which supervises the final settlement of the accounts of a personal representative, and ascertains and declares the interests of heirs in such estate as may remain after the demands of creditors are satisfied, should have the power to make partition. We are not prepared to say that this belief is not well grounded. The connection between the administration, settlement, distribution, and partition of an estate is such, that the power to make partition may be justly regarded as ancillary to the power to distribute such estate, and, therefore, not alien to the probate system as it has long

existed and now exists in many States. For the reasons stated, and in view of the recent decisions of the highest court of California, we do not feel at liberty to hold that the legislature could not constitutionally invest Probate Courts with jurisdiction to make partition of an undivided estate among the heirs at law of the deceased.

It is proper, in this connection, to say that there is nothing in *Ferris* v. *Higley*, 20 Wall. 375, 382, upon which the plaintiffs rely, to show that partition is foreign to the probate system as administered in this country. The decision there was, that, in view of the organic act of Utah, which did not define the jurisdiction of the Probate Courts, and in view of the distribution by that act of judicial power among the various courts of that Territory, the jurisdiction of Probate Courts must be determined with reference to the general nature and character of the latter tribunals as recognized in our system of jurisprudence. An act of the territorial legislature, giving Probate Courts "original jurisdiction, both civil and criminal, and as well in chancery as at common law, when not prohibited by legislative enactment," was, therefore, held to be unconstitutional. So far from the doctrines of that case militating against the decision of the Supreme Court of California in *Rosenberg* v. *Frank*, it was said in *Ferris* v. *Higley* to be the almost uniform rule among the people who make the common law of England the basis of their jurisprudence, to have a distinct tribunal for the establishment of wills and the administration of the estates of men dying either with or without wills — which tribunals are "variously called Prerogative Courts, Probate Courts, Surrogate Courts, Orphans' Courts, &c.;" and that to these functions "have occasionally been added the guardianship of infants, and control of their property, the allotment of dower, and perhaps other powers related more or less to the same general subject."

It remains to consider whether the decree of partition is void upon grounds other than those relating to the constitutionality of the statute under which the Probate Court proceeded. The Circuit Court of the United States had no jurisdiction to set aside that decree, merely upon the ground of

error, nor could it refuse to give it full effect, unless the Probate Court was without jurisdiction of the case. *Cooper* v. *Reynolds*, 10 Wall. 308, 315; *Gunn* v. *Plant*, 94 U. S. 664, 669; *Hall* v. *Law*, 102 U. S. 461, 464; *Marchand* v. *Frellsen*, 105 U. S. 423, 428. And in determining the question of jurisdiction, it must be remembered that Probate Courts of California have had for many years the rank of courts of general jurisdiction, and, as said in *Burroughs* v. *De Couts*, 70 California, 361, 372, their proceedings, "within the jurisdiction conferred upon them by the law, are to be construed in the same manner and with the like intendments as the proceedings of courts of general jurisdiction, and their judgments have like force and effect as judgments of the District Courts." Probate Courts being, then, courts of superior jurisdiction, in respect to the settlement, distribution, and partition of estates coming within their cognizance, the recitals in the decree of partition unless contradicted by the record, will be presumed to be correct, and every intendment will be indulged in its support. *Settlemier* v. *Sullivan*, 97 U. S. 444, 449; *Cheely* v. *Clayton*, 110 U. S. 701, 708. With these preliminary observations as to the effect to be given to the decree and its recitals, where the decree is attacked in a collateral suit, we proceed to examine such of the objections to its validity as we deem of sufficient importance to notice.

1. It is contended that the administratrix, as such, had no interest in the partition of the decedent's estate, and could not, in that capacity, initiate proceedings therefor. Too much stress is laid upon the circumstance that the petition in the Probate Court was signed by Mrs. Hawes, as "administratrix." The petition seeks something more than a final settlement of her accounts, and a declaration of the interests of the heirs in the undistributed estate. It embraces also her claim as widow and heir, to a share in the estate remaining after the payment of debts and charges, and contains a distinct prayer that partition be had between herself and the children. It shows, as do the orders preceding the decree of partition, that she sought a settlement of her accounts as administratrix, and a final adjudication of her rights as heir at law in the estate ro

maining in her hands. If it would have been better practice to have made partition the subject of a suit entirely separate from the proceeding for settlement and distribution, the blending of final settlement, distribution, and partition in the same petition, or in one suit, did not defeat the jurisdiction of the court or render its decree of partition void. The record shows that the question of partition was not considered or determined in the Probate Court until after it had made its decree of final settlement and distribution.

2. It is contended that proper notice was not given to the minor children of the proceedings in the Probate Court. This point is not sustained by the record of those proceedings. The decree of distribution recites that it appeared to the satisfaction of the court that due and sufficient notice of the time and place of hearing the petition had been duly given, as required by law, prior to the day set for hearing, and that the attorney appointed by the court to represent the minor children appeared at the hearing. It is also shown that this attorney was present at every step of the proceedings for partition. The decree for partition recites that it appeared to the satisfaction of the court that the commissioner appointed to make partition "gave notice to all parties interested, in all respects as prescribed by the statute in such cases." These recitals are not contradicted by anything in the record, unless it be that representation of the minor children in the proceedings for settlement, distribution, and partition, by an attorney appointed by the court, rather than by a guardian *ad litem*, was wholly inadequate to bring them into court. It is to be remembered that the Civil Code expressly provides, that notice of proceedings for partition may be " either personally or by public notice, as the Probate Court may direct," § 1676 ; and if the account presented by the personal representative be one for final settlement, and the estate be ready for distribution, " on confirmation of the final account, distribution, and partition of the estate to all entitled thereto, may be immediately had, without further notice or proceedings." § 1634. It should also be observed that if the recitals, in the decrees of distribution and partition, of due notice, be open to dispute in

this collateral proceeding, it does not appear that the publication was not made, in all respects, as required by the order of court, and by the code.

In this connection it is insisted that the particular mode adopted in publishing notice of the proceedings for settlement, distribution, and partition, was not sufficient, in law, to give the court jurisdiction as to the children. This position is not tenable. The order to show cause why there should not be a final settlement and distribution, followed by a partition, according to the rights of the parties, was very full and explicit; and it was served in one of the modes by which, under the local law, jurisdiction could be acquired. The mode adopted was by publication for "four successive weeks in such newspaper in the county as the court or judge shall direct." § 1539. *Pearson* v. *Pearson,* 46 California, 609, 635. The failure to repeat, in the order, the names of the minor children — whatever force that objection might have had upon a direct appeal from the decree of partition — is not a matter affecting the jurisdiction of the court over the subject-matter and the parties; for, the petition, and the order appointing an attorney to represent the minors, contained the names in full, of all interested in the proceedings for settlement, distribution, and partition.

3. It is, however, insisted that the defence for the minor children — who are not shown to have had, at the time, any general or special guardian in the county or State — could only have been conducted by a guardian, and that the appearance in their behalf by an attorney, appointed by the court to represent them, did not bring them into court. This position is based upon §§ 372 and 373 of the Code of Civil Procedure. But those sections, in our opinion, have reference to civil actions as distinguished from "special proceedings." Code of Civil Procedure, §§ 20 to 23; 372–3. A suit for partition, in a Probate Court, is a special proceeding, *Waterman* v. *Lawrence,* 19 California, 210, 218; and the section which controls the determination of this question is § 1718, part of Title XI, relating to "Proceedings in Probate Courts." That section, among other things, provides that "at or before the hearing of peti-

tions and contests for the probate of wills; for letters testamentary or of administration; for sales of real estate and confirmations thereof; settlements, partitions, and distributions of estates; setting apart homesteads; and all other proceedings where all the parties interested in the estate are required to be notified thereof, the court must appoint some competent attorney at law to represent, in all such proceedings, the devisees, legatees, heirs, or creditors of the decedent, who are minors and have no general guardian in the county, or who are non-residents of the State; and may, if he deem it necessary, appoint an attorney to represent those interested, who though they are neither such minors or non-residents, are unrepresented. The order must specify the names of the parties for whom the attorney is appointed, who is thereby authorized to represent such parties in all such proceedings had subsequent to his appointment. The appearance of the attorney is sufficient proof of the service of the notice on the parties he is appointed to represent." We have not been able to find any provision requiring the appointment of guardians *ad litem* in probate proceedings. Without considering whether the failure to appoint a guardian *ad litem* for minors, where the statute requires it to be done, would vitiate the decree, and make it open to attack collaterally, it is sufficient to say that the appointment of an attorney to represent the children in the Probate Court was authorized by the statute.

These views are in conformity with the recent decision in *Carpenter* v. *Superior Court of San Joaquin County*, decided April 21, 1888, and not yet reported. One of the questions there was as to the validity of certain proceedings for the probate of a will, in which minor heirs were represented by an attorney, appointed by the court, and not by a guardian *ad litem*. Reliance was placed upon the section of the Civil Code, § 372, part of the title "Parties to Civil Actions," which provides that "when an infant is a party he must appear by his general guardian, if he has one; and if not, by a guardian who may be appointed by the court, in which the action is prosecuted, or by a judge thereof, or a county judge." It was held that probate proceedings were not civil actions within

the meaning of that title.    The court said, "The thing which a guardian *ad litem* is appointed to do is, to 'represent' the infant in the action or proceeding, Code Civil Procedure § 372, by which we understand that he is to conduct and control the proceedings on behalf of the infant.    Now the attorney for minors in probate proceedings is to 'represent' the minor, Code Civil Procedure § 1718, and so far as he is concerned, to conduct and control the proceedings; so that if the general provisions apply it would be possible to have two representatives of the minor in the same contest, neither of whom would be subordinate to the other.    We do not think that such a result could have been intended."

There are no other questions in the case which we deem it necessary to discuss.    We find no error in the judgment below; and it is

*Affirmed.*

MR. CHIEF JUSTICE FULLER was not a member of the court when this case was argued, and took no part in its decision.