ANN BYRNE v. GEORGE HUME, EXECUTOR, ETC.[1]

*Will—Construction—Jurisdiction of probate court—Res judicata— Devise—Incumbered real estate—Legacy.*

1. How. Stat. § 5964, gives the probate court jurisdiction in the settlement of estates to construe wills. *Glover v. Reid*, 80 Mich. 228.

So *held*, where a legatee filed a petition in probate court to compel the executor to pay over the balance of a legacy, a portion of which he had used in paying a mortgage on a farm devised to the legatee, claiming that such was the intention of the testator. The probate court so held, and dismissed the petition, and the legatee did not appeal, but sought to secure *like relief* in the equity court. And it is held that the decree of the probate court determined the construction of the will, and that the question is res *judicata*.

2. A son devised to his aged parents, as *joint tenants*, a farm which he had taken subject to a mortgage, and upon which they resided. He also directed his executor to pay them, or the survivor, a legacy of $3,500 out of his life insurance as soon as it was collected. The executor wrote to the parents that ·he had collected the insurance, and that, as they were probably aware, their son intended to have the mortgage upon the farm paid off, and inclosed an order for them to sign directing him to make such payment out of the legacy, which they did, and returned the order to him, and he paid the mortgage, and forwarded it to them, and paid them the balance of the legacy.

---

[1] A rehearing was ordered in this case at the January term, 1891, and the case was again submitted at the April term.

Accounts were filed, from time to time, by the executor, in one of which appeared a credit for the amount of the legacy, to which objection was filed, but the account was allowed, and no appeal was taken; but no final settlement of the estate was had, as under the will the executor was to carry on the business of the testator, and such final settlement was to be deferred for six years. On the hearing of a petition by the surviving parent for an order directing the executor to pay her the balance of the legacy, the probate court construed the will in harmony with the action of the executor, and dismissed the petition, which order was not appealed from, but the petitioner filed a bill in chancery against the executor to recover the legacy, less the amount paid to her and her husband, which bill is dismissed on the ground that the question of the construction of the will is *res judicata*; and the following propositions are summarized from the opinion:

*a*—The executor held the funds for distribution to the parties to whom the testator intended by the will to give them, and, if he was at all uncertain whether the testator meant to have the mortgage paid out of the legacy, it was his plain duty to have filed a bill to secure a construction of the will.

*b*—The settlement of the accounts of the executor, from time to time, in the probate court, though known and assented to by complainant, and the order given for the payment of the mortgage out of the legacy, could not estop complainant from setting up her claim to it.

*c*—The fact that the executor has paid the mortgage out of the legacy, under the circumstances stated, ought not to change the situation of the parties or their rights, though it may have been paid with the consent of the legatees.

*d*—It was the plain intent of the testator that his executor should pay the mortgage the same as other debts, and preserve the farm for his aged parents, and to pay to them the legacy as soon as the life insurance was collected, and in making such payment he discharged a legal duty.

Appeal from Kent. (Grove, J.) Argued November 20, 1890. Decided December 24, 1890.

Bill to compel the executor of an estate to pay over a portion of a legacy alleged to be due. Complainant appeals. Decree dismissing bill affirmed. The facts are stated in the opinion.

*Eggleston & McBride*, for complainant.

*T. J. O'Brien* and *J. H. Campbell*, for defendant.

LONG, J. The complainant, as survivor or herself and William Byrne, brings this suit against defendant, as executor of the last will and testament of Thomas Byrne, deceased, to recover the sum of $2,429.34, part of a legacy of $3,500 left by said will to herself and her husband, William Byrne, now deceased. The sum in dispute was paid by the executor to satisfy a mortgage upon a farm devised by the same will to the said legatees.

The will of Thomas Byrne, under which this controversy arises, was made on January 17, 1882, and contained the following provisions:

"*Second.* I give and devise to my father and mother, William Byrne and Ann Byrne, of the town of Grattan, in said county of Kent, the farm on which they now reside, situate in said town of Grattan, and described as follows, viz.: The south-east quarter of the south-east quarter, and lot number three (3), all on section twenty-nine (29), in town eight (8) north, of range nine (9) west; to have and to hold the same as joint tenants, and not as tenants in common, in fee-simple; and, if either my father or mother shall die before I do, I then give and devise said farm to my surviving parent, his or her heirs or assigns, forever.

"*Third.* I also give and bequeath to my said father and mother all the stock, utensils, horses, and personal property situate on said farm, and in use in connection therewith; and, if my father or mother shall die before I do, I then give and bequeath said stock, utensils, horses, and personal property to my surviving parent.

"*Fourth.* I also give and bequeath to my said father and mother the sum of thirty-five hundred dollars, and I direct my executor to pay the sum over to them out of my life insurance money payable to my executor as soon as collected; and, if either my father or mother shall die before I do, I then give and bequeath said sum of thirty-five hundred dollars to my surviving parent."

Thomas Byrne died a few days after this will was made. Mr. Hume, the executor named in the will, accepted the

trust, and qualified and entered upon its execution in March, 1882. The land described in and devised by the second paragraph of the will was formerly owned by Michael Byrne, a brother of Thomas. On February 4, 1875, he borrowed of Aaron Brewer, $2,200, to be paid in five years, with interest at 10 per cent. Michael gave his note and a mortgage on the farm to secure the debt. August 26, 1880, Michael Byrne and wife conveyed the land to Thomas Byrne by quitclaim deed. The deed does not mention the mortgage.

April 17, 1882, Mr. Hume, the executor, had received the insurance money. On that day he wrote to William and Ann Byrne the following letter:

"I have received the insurance money, out of which the legacy left you by your son Thomas was to be paid. As you are probably aware, it was his intention to have the mortgage upon the farm paid up; and if you will sign the inclosed order, and return the same to me, I will get the matter all straightened up. I inclose a receipt for one thousand dollars, and an order on First National Bank, Grand Rapids, and have arranged with the bank to pay you one thousand dollars on presentation of receipt and order properly signed. Of course, if you go for the money yourself, you need not sign or use the order. Sign all the spaces left for dates, names, etc.

"Yours truly,

"GEORGE HUME, Executor."

He had left for these parties $1,000 at the bank, as stated in the letter. With the letter he inclosed a receipt for the money, to be signed by them and returned; also an order to pay the mortgage, to be signed. Mr. Hume then lived in Muskegon; the other parties in Grattan, Kent county. The receipt is for $1,000 on account of legacy. The order to pay the mortgage is as follows:

"GRATTAN, MICH., May 5, 1882.

"MR. GEO. HUME,

"Executor of the Estate of Thomas Byrne,

"Muskegon, Mich.:

"You will please pay out of the legacy left us by

Thomas Byrne, and have discharged, a certain mortgage on the south-east $\frac{1}{4}$ of the S. E. $\frac{1}{4}$, and lot No. 3, section 29, town 8 north, range 9 W., given by Michael Byrne to Aaron Brewer, and then pay over to us the balance of said legacy that may be left in your hands.

"WILLIAM BYRNE.

"ANN BYRNE,

"Pr. A. Byrne."

After receiving the order, the executor, on May 15, 1882, paid Mr. Brewer the full amount remaining due on the mortgage, $2,429.34. The mortgage was discharged of record. The executor took up the note and mortgage, and returned them to William and Ann Byrne. On May 22 following, the executor sent his check of $67.66 to them, as the balance due on the legacy, inclosed in the following letter:

"I inclose my check on First Nat. Bank, Grand Rapids, for $67.66, in payment of balance due you on acc. of legacy left you by your son Thomas. Please sign the inclosed receipt, and return same to me. I inclose herewith Michael Byrne note and mortgage. The discharge is now in the office of the register of deeds, and will be sent you as soon as recorded.

"Truly yours,

"GEORGE HUME, Ex'r."

They signed and returned the receipt to him. It is as follows:

"Received of George Hume, executor, sixty-seven 66-100 dollars, being balance due of $3,500 legacy left us by our son, Thomas Byrne.

"ANN X BYRNE.

"WILLIAM BYRNE."

On March 10, 1883, the executor filed in the probate court for Kent county his first report and account. He gave himself credit for the amount of $3,500 as paid to William and Ann Byrne as legacy under the will, and the Grattan farm was accounted for at $4,800. An order was made and duly published appointing a time for hear-

ing the account, and a hearing was had, the account being duly allowed. A second and third account was filed by the executor, and notice published; and on the hearing of the third account so presented, John Byrne appeared by Mr. Eggleston, acting as his attorney, and objected to the allowance of the $3,500 as paid to William and Ann Byrne in full of said legacy. The account was allowed, however, and no appeal taken.

On April 14, 1885, Ann Byrne, the complainant in this suit, filed a petition in the probate court praying that the balance of the legacy be paid to her. That petition stated, substantially, the facts now set up in the present bill, and prayed for the same relief. A citation to the executor was issued, and he appeared, and filed his answer. A hearing was had in the probate court, and the petition was dismissed. No appeal was taken from that order. The defense to the present bill is:

1. That the matter in controversy here is *res judicata*, under orders and decrees of the probate court—

*a*—Dismissing the petition filed by complainant praying for the payment to her of the same money upon the same grounds.

*b*—Allowing the executor's first and third accounts, which covered the matters in dispute in this suit.

2. The legatees gave to the executor a written order to pay the mortgage out of the legacy, and they were thereby legally chargeable with the moneys paid on the mortgage.

On the hearing in the court below the complainant's bill was dismissed. Complainant appeals. There has been no final settlement of the estate, and a large amount of the funds of the estate yet remains in the hands of the executor. By the terms of the will the executor is to carry on the partnership and other business in which the testator was engaged, and the estate is to be wound up and settled within six years after the testator's death. The estate was inventoried at the sum of $471,000.

The settlement of the accounts of the executor, from time to time, in the probate court, though known and assented to by the complainant, could not estop her from setting up her claim to this legacy, nor could the order given for the payment of the mortgage out of the legacy.

Considerable testimony was taken in the court below as to the physical and mental condition of the complainant and her husband at the time these papers were executed, and the circumstances under which the signatures of the parties were obtained. It is claimed on the part of the complainant that William Byrne, at the time these transactions occurred, was not of sufficient mental capacity to transact business intelligently, and that Mrs. Byrne could neither read nor write, and did not understand that she was giving up the legacy to pay the mortgage. These were disputed questions of fact on the hearing, and upon which some considerable testimony was given; but just what question was the decisive one in the opinion of the trial court does not appear from the record before us. It is not shown whether the ·trial court concluded that the parties were estopped from now making the claim to the legacy, or that, the petition having been heard in the probate court upon the same matter and for the same relief, it was *res judicata*.

The executor held these funds-for distribution to the parties to whom the testator intended by the will to give them. If the executor was at all uncertain whether the testator meant to have the mortgage paid out of this legacy, his plain duty was to have filed his bill for a construction of the will. If the executor refused to pay the legacy, and there was a contention as to the true intent and meaning of the will, a court of equity should have been appealed to for a settlement of that question. The fact that the executor has paid the mortgage out of the legacy, under the circumstances stated upon this record,

ought not to change the situation of the parties or their rights, though it may have been paid by the consent of the complainant and her husband. If it was the intent of the testator that the executor should pay and discharge the mortgage, and that his father and mother should have the farm disincumbered of the mortgage, and, in addition, should have the full amount of the legacy, then the executor in the payment and discharge of the mortgage has done no more than he was legally bound to do, and what the court having jurisdiction of the matter should have compelled him to do. He had the funds of the estate still in his hands, sufficient to have his account adjusted without personal loss to himself, and would be put in no different position by the fact of the payment of any of the legacy than if it had been paid by any other funds. It was a question, pure and simple, between the estate and Ann Byrne, and must have depended upon the construction to be given to the will. The only guide in determining that question is, what is the intention of the testator? If this can be ascertained from the terms of the will, it must be followed.

A will is said to be a declaration of a man's mind as to the manner in which he would have his property or estate disposed of after his death. The parts of the will important to this question have been set out. By the second clause he gives his parents the farm to hold as joint tenants, and not as tenants in common; and he is particular to state that the survivor should take the whole. It would appear from this clause, and the circumstances in which his parents were placed, that he intended this for the home of his aged and infirm parents, and to put it in such form that no one could acquire the separate rights or estate of either without the joint act of both. He, by the third clause, gave them all the personal property on the farm, and the survivor was to take that.

By the fourth clause he bequeathed to them the legacy of $3,500 out of his life insurance money, and directs its immediate payment to them by the executor as soon as collected, and he provides carefully in this clause that the survivor of them shall have this sum. Taking the will as a whole, in view of the large estate possessed by the testator, and his evident desire to make a home for these old people, it cannot be said that he intended to have this large mortgage upon the farm which they were to possess and enjoy, and where the survivor was to live after the death of the other, or to have and control, and compel them to pay it, or, in default, to lose the farm, and be turned out upon the world. If the legacy was to be set aside to pay it, he has made no such direction, but, on the contrary, has directed its payment immediately over to his parents. No one, in reading this will, considering the situation of the parents, their age and infirmities, and the estate possessed by the son, and his evident desire to preserve a home for them, can consistently claim that it was the intent of the testator that the mortgage should either be left upon the farm, and eventually foreclosed, and his parents turned out of a home, or that the legacy should be used in its payment and discharge after coming into the hands of the parents. It was the plain intent of the testator that his executor should pay and discharge this mortgage the same as other debts, and preserve the home for these aged people, and to pay this legacy over as soon as collected. In paying the mortgage, he has discharged a legal duty.

Had the question been presented to us as one upon which we had now the power of direction, we should unhesitatingly hold that it was the duty of the executor to pay over to the complainant the balance of the legacy. But it is her misfortune that she did not appeal from the

84 MICH.—13.

order of the probate court. There, a petition was filed setting out, substantially, what is set out in this bill, and the probate court ruled the construction of the will against her. From this decree denying her rights she has not appealed. Under our former ruling, we have settled the doctrine in this State that the probate courts have the jurisdiction in the settlement of estates to construe wills. *Glover v. Reid*, 80 Mich. 228, and cases there cited. This jurisdiction is given under How. Stat. § 5964. It is true that the cases cited arose under appeals from probate courts; but the doctrine laid down in those cases clearly recognized the jurisdiction conferred by the statute. The decree of the probate court must therefore be held as determining the construction of the will, and *res judicata* to the present bill.

The decree of the court below must be affirmed, with the costs to be paid out of the estate.

The other Justices concurred.