## SHURTE v. FLETCHER.

1. ESTATES OF DECEDENTS—SETTLEMENT—VALIDITY.

A conveyance and agreement by which the interests of the several heirs in an estate are conveyed to a trustee in order that he may make conveyances for the partition of the estate among the heirs according to allotments agreed upon, the effect of which is to cut off the interest of one of the heirs, will be set aside, where it appears that the latter, when the papers were executed, was so nearly blind as to be unable to read them, that he was misinformed as to their effect, and that he notified the trustee, before the latter had acted in the matter, that he should insist upon the same interest to which he would have been entitled had the alleged agreement not been made.

2. SAME—PROBATE COURTS—REFUSAL TO APPOINT ADMINISTRATOR—RES JUDICATA.

Refusal of the probate court to appoint an administrator on the ground that the estate has been settled by an agreement of the heirs is not *res judicata* as to the validity of such agreement, as the court could not decree specific performance of the agreement if valid, or cancel it if invalid.

Appeal from Cass; Coolidge, J.  Submitted June 12, 1896.  Decided December 9, 1896.

Bill by William Shurte against Sarepta Fletcher and others to set aside certain conveyances made in settlement of an estate, for a partition of the real estate, and for other relief. From a decree for complainant, defendants appeal. Affirmed.

*Edward Bacon* and *Spafford Tryon*, for complainant.

*Harsen D. Smith*, for defendants.

MOORE, J. The complainant filed a bill in chancery, alleging that his father, Isaac Shurte, at the time of his death, held the legal title to 546 acres of land, worth $30,-000; that he died March 2, 1886, intestate, leaving a widow, five children, and several grandchildren by a deceased child; that the widow, Mary Shurte, died in January, 1892, intestate, and that each of the children of Isaac Shurte became seised in fee of one-sixth of said real estate; that, at the time of the death of the widow of Isaac Shurte, there were two great grandchildren, Bertha Van Riper and Flora Van Riper, who were under the age of 21 years; that all of the heirs of said Isaac Shurte, except the two great grandchildren, were more than 21 years of age, and that, soon after the death of said Mary Shurte, they became desirous of making an amicable arrangement for the partition of said real estate among the heirs at law, and for that purpose there were negotiations in which various plans were mentioned; that the real estate to be partitioned was not of uniform value, and that the conditions were such that the various values and improvements must be considered in ascertaining the allotments to be made; and that in said negotiations it was determined that a deed should be made of the real estate to Elbridge Jewell, such deed to be executed by all of said heirs except the two minors, and that there should be a guardian's sale of the interests of the two minors in said real estate, and that said Jewell should become the purchaser, so that the legal title of said real estate should be vested in him for one purpose only, namely, that

he should make proper conveyances for the partition of said real estate among said heirs, the allotments or shares to be agreed upon subsequently among said heirs.

That it was agreed there should be a writing, declaring the purpose of the deed, and that the shares and boundaries as aforesaid were to depend on subsequent agreement; that said deed and other writing were duly prepared and executed, and that the negotiations were reduced to writing and expressed in said deed, a copy of which is hereto annexed, and marked "Exhibit A," and in said other writing, which was to be annexed to said deed, and a copy of which is hereto attached, and marked "Exhibit B;" that said Elbridge Jewell was well informed of said negotiations, and knew the contents of all writings pertaining to the transaction aforesaid; that he accepted the deed aforesaid, knowing that said Exhibit B was to be annexed thereto and treated as a part thereof; that he received said deed without any consideration moving from him, and that said deed was made without any consideration, except as expressed in said Exhibit B, namely, that said Elbridge Jewell was to be used as an instrument to make conveyances of allotments to be agreed upon as aforesaid; that by reason of defective eyesight the complainant was unable to read the writings set forth by said exhibits; that his son signed his name wherever it is signed on said writings, complainant depending on information from others present for his knowledge of the contents of said writings; that never after the death of his father, Isaac Shurte, did he cease to have his interest by inheritance in one equal, undivided sixth of all real estate owned by said Isaac Shurte at the time of his death, and not sold; that complainant caused his name to be signed to the aforesaid writings in reliance upon representations then made to him by other heirs of said Isaac Shurte, and in reliance upon the express terms of said Exhibit B, causing complainant to believe that there would be no conveyances made by said Elbridge Jewell for any partition aforesaid, except on proper agree-

ment among the heirs aforesaid as to what premises should be conveyed as allotments; that there never has been any such agreement or dictation as is in said Exhibit B provided, and there is no probability that there ever will be.

That during the lifetime of said Isaac Shurte, and many years before his death, the complainant purchased from his father, Isaac Shurte, a certain part of the Isaac Shurte land aforesaid, consisting of about 80 acres, at the agreed price of $2,440; that afterwards he fully paid for said land; that, about 10 years after said purchase, complainant made an exchange with said Isaac Shurte, by which he surrendered 25 acres of land, and took in place thereof about 28 acres of land belonging to said Isaac Shurte; that complainant took immediate possession of the land first purchased as aforesaid, about 80 acres, and had exclusive possession thereof until said exchange, and that after said exchange he constructed a house upon said 28 acres, and ever after continued in exclusive possession of said 28-acre tract and the remaining part of said 80 acres, such possession continuing for more than 20 years last past; that he has made extensive improvements on said lands; that said land has been regularly assessed to him, and he has regularly paid the taxes thereon, claiming said land as his own, his father making no claim thereto; that through inadvertence the said Isaac Shurte never made any conveyance of said purchased land to complainant, and that, at about the time of said negotiations, resulting in said writings, the other heirs, except said two minors, being well informed as to complainant's purchase and rights to the purchased land, he had conversations with them concerning the neglect of his father, to make the proper conveyance to him, and that the other heirs engaged in said negotiations admitted complainant's rights to said purchased land, and agreed that he was entitled to a conveyance thereof; that he prepared a deed for said heirs to execute to him, and they were willing to execute it, but it was suggested that, by reason of the

minority of Flora Van Riper and Bertha Van Riper aforesaid, it would be better for complainant's interests that his purchased land should be included with the other Isaac Shurte land in the deed to said Jewell, and that, after said Jewell should obtain, on guardian's sale, the interest of said Flora and Bertha Van Riper, then he would make to complainant a deed of said purchased land, which would give him a perfect title thereto; and that complainant, believing what was suggested to him, agreed that his purchased land should be included in said deed to Jewell, it being expressly agreed that Jewell should promptly convey said purchased land to complainant as soon after the guardian's sale as might be, and thereupon his purchased land was included in said deed to Elbridge Jewell for the sole purpose of enabling complainant to obtain a good conveyance thereof, and for no other purpose; that it was never intimated to complainant that said premises were claimed to be a part of his father's estate left for distribution; that no administrator was ever appointed to administer the estate of said Isaac Shurte, and, further, that complainant has never been familiar with business transactions and dealings in land, and that in none of the transactions aforesaid did he have the aid of counsel; that, in relation to the writings aforesaid, he relied wholly upon representations of other heirs aforesaid, and never intended to prejudice his interests in said estate by any writings, negotiations, or agreements aforesaid, and he insists that his rights in his father's estate are unaffected, and are by no means impaired.

That, soon after the making of said writings as aforesaid, and before said Jewell had made any conveyance of any real estate aforesaid, complainant expressly notified said Jewell that he would insist on all his rights, and that no conveyance must be made by said Jewell of any of the real estate aforesaid without his consent thereto, and that he must have his sixth of all real estate which belonged to said Isaac Shurte at the time of his death; that afterwards, and in fraud of complainant's rights, and

contrary to the terms of said writing, Sarepta Fletcher
obtained from said Jewell a conveyance of a part of said
Isaac Shurte land, owned by said heirs as tenants in com-
mon; that such conveyance was duly recorded in the
office of the register of deeds for said county of Cass;
and that said deed of conveyance is entirely void, and is
in fraud of complainant's just and lawful rights, and was
made without any sufficient authority by said Jewell, and
contrary to the plain terms of said Exhibit B; that said
Jewell, contrary to the terms of Exhibit B, and in fraud
of complainant's rights, has by some kind of conveyances
conveyed or attempted to convey other parts of said real
estate owned by said Isaac Shurte at the time of his death,
and thereafter owned in common by said heirs, to certain
heirs of said Isaac Shurte, so as to make a pretended par-
tition, excluding complainant; that complainant has never
agreed to or dictated any conveyance which said Jewell
has made, and, further, that every conveyance made by
Jewell has been made without any such agreement and
dictation as is required by Exhibit B, and in disregard of
complainant's objections; that the conveyance to Sarepta
Fletcher is of nearly one-fourth of the entire land owned
by Isaac Shurte at the time of his death, excepting the
lands purchased by complainant as aforesaid, and was
made on a plan of excluding him from all interests in the
lands aforesaid, excepting, only, his purchased land afore-
said; that Sarepta Fletcher, claiming title under said
conveyance from Jewell, has commenced a suit in eject-
ment against complainant to recover possession of the
said lands conveyed to her by the said Jewell; that said
suit has been noticed for trial at the September term
of court, and that, unless the prosecution of said suit
is restrained by the order of the court, the suit will come
to trial speedily, and will wrong complainant in his equit-
able rights; that the Isaac Shurte land is so situated that
partition of all the land can readily be made under the
direction of the court, and that complainant is desirous
that such partition be made, and that he may have set off

and duly conveyed to him in severalty all that he is entitled to.

That, concerning the legality or validity of claims set up by some of the heirs aforesaid in negotiations resulting in the deed to Jewell, and the agreement set forth in Exhibit B, complainant was in ignorance and without advice or counsel concerning his legal rights; that complainant never received from his father, Isaac Shurte, any property or money by way of an advancement or otherwise, so that the same ought to reduce his sixth of any real estate aforesaid owned by said Isaac Shurte at the time of his death; that said Bertha and Flora Van Riper, hereinbefore mentioned, are minors, and can come to no agreement and make no conveyance that will be legal and binding; that complainant is informed and believes that the guardian's sale mentioned in Exhibit B was had, but the legality and validity thereof may be successfully contested by said minors; that complainant has never received, from any heir or heirs of said Isaac Shurte, deceased, other than himself, any manner of consideration for any transfer or surrender of any of his rights in any real estate aforesaid; that, when complainant warned said Jewell as aforesaid, prior to said guardian's sale, said Jewell agreed with him to make no partition conveyances until he should be perfectly satisfied with the conveyances to be made, and, repeating his assurance, said, "I will make no deeds until you are all perfectly satisfied;" that, when the writings set forth by Exhibits A and B were, on or about May 5, 1892, presented to complainant for signature, it was represented to him by other heirs of the said Isaac Shurte that the writing, of which Exhibit B is a copy, might properly and lawfully provide, as it does, that said Jewell should, at the guardian's sale therein mentioned, become the purchaser of the interests of the aforesaid minors; and that complainant, being without experience or legal knowledge or advice on the subject, believed such representations to be true, but is now advised and alleges that

such provision was illegal and void, and would in law be a fraud against said minors; and complainant is informed and believes that at the alleged guardian's sale aforesaid there was no payment on the money bid.

The prayer of the bill was that a decree be made declaring complainant to be the owner in fee simple of the ·82 acres before mentioned, and that he is entitled to have, free and clear of all incumbrances and claims, one equal, undivided sixth of all other lands aforesaid, designated as the "Isaac Shurte Land," and that the deeds from Jewell to any heir or heirs aforesaid of Isaac Shurte, deceased, other than complainant, may be set aside and held for naught, and that said deed to Jewell may be set aside, if necessary for adequate relief to complainant under his bill, and that due partition may be made of all the lands aforesaid, other than the land belonging to complainant as purchaser as aforesaid, and that all proper conveyances may be decreed, with a general prayer for relief.

The defendants answered in the cause, and alleged that, in addition to the real estate mentioned in complainant's bill, the estate consisted of a large amount of indebtedness from the heirs to the estate; that the complainant owed the estate upwards of $10,000; that other heirs owed large sums of money, some in excess of their interest in the estate; and that the heirs got together, and made a compromise, and a final agreement was reached that would settle the whole estate; that "that agreement was that all the heirs should execute and deliver a warranty deed of all the lands Isaac Shurte died seised of to Elbridge Jewell, and said Jewell should acquire the whole title to all of said lands. Then all of said lands, except a certain piece that was agreed should be deeded to complainant, William Shurte, should be appraised at its cash value, by Joseph Lybrook and George Crawford, and the value they fixed upon said lands should be the value of said lands for partition and division. * * * It was further agreed that the lands described in Exhibit

C in complainant's bill should be deeded to the complainant, William Shurte, and that the claim of said estate, amounting to $10,889.22, against said William Shurte, should be surrendered to him, and that said land and said claim should be in full of all said William Shurte's interest in said estate. The deed (Exhibit A) and the contract (Exhibit B) of complainant's bill were prepared as set forth in complainant's bill, but were not signed, and the heirs and parties thereto refused to sign either of said exhibits, until the exact amount of land, and a description thereof, which each heir was entitled to and was to receive, was agreed upon and made a part of Exhibit B; and then and there, on the 5th day of May, 1892, the said heirs did, by mutual agreement, divide to each of said heirs the exact amount and parcel of land each was entitled to, and the exact description of each of said parcels that each of said heirs was entitled to and was to receive by deed from said Jewell, and the said partition, division, and description then and there became a part of said Exhibits A and B before either of said instruments were executed."

That Jewell made his deeds of said lands as by said contract he was directed to do, and that the complainant signed said contract, well knowing by its terms that all the lands mentioned in Exhibit A of his bill of complaint were partitioned and divided by agreement, and just what lands he was to have, and "that he was to have no more or other lands than what was contained in said contract, and which has since been deeded to him by Jewell;" and that all claims that said partition of lands "was without his consent, and was a fraud upon his rights, are false and untrue."

That, "after the estate had been fully settled, and all the lands described in Exhibit A of complainant's said bill had been deeded by said Jewell as the parties had contracted and agreed, and all the notes held and owned by said estate against each of the heirs of said estate had been offered, tendered, or surrendered to each of said

heirs, as had been agreed, the complainant herein, said William Shurte, filed his petition in the probate court, * * * praying that an administrator be appointed for the estate of said Isaac Shurte; that this petition was made and filed in said probate court August 15, 1892; that the other heirs of said Isaac Shurte appeared and opposed the granting of letters of administration, on the ground that said estate had been fully settled by the agreement of all the heirs; and the probate court so adjudicated and decided. * * * And these defendants insist that the matter attempted to be litigated in this suit, to wit, whether said estate has been legally settled, by the agreement of all the heirs and parties interested therein, is *res judicata.*"

At the hearing about 400 pages of printed testimony was taken. The trial judge found the averments of the bill of complaint to be true, and made a decree as prayed for therein. The defendants appeal. The testimony has all been carefully read; but it will be necessary to refer to it but briefly. The record establishes conclusively that, as to 82 acres of the land, the complainant bought it of his father years before the father's death, and had paid for it; that it was considered by all the family as his. The brothers and sisters were surprised to learn, after the death of their mother, that William did not have the legal title to this 82 acres of land. He had the equitable title, and was entitled to the legal title. As to the 82 acres of land, it was no part of the estate of Isaac Shurte, and, unless an agreement was made between William and the other heirs which would change his situation, he was entitled, not only to a deed to this 82 acres of land, but also to an undivided one-sixth interest in the estate left by his father. It is the claim of the defendants that such an arrangement was made. They concede he should have title to 82 acres, but insist that, because of a compromise and settlement between the heirs at law, in which William participated, he has no interest in the estate beyond the 82 acres. The record discloses that there

belonged to the estate notes, given by the heirs to the father and mother, amounting, with the interest added, to upwards of $35,000. Many of these notes were given upwards of 25 years ago, and were outlawed. It is the claim of the defendants that there was due on the notes of F. M. Shurte $11,500, on the notes of William $10,500, of Mrs. Hardenbrooke $7,000, and smaller amounts from the other heirs, and that these amounts were agreed upon, and that, when the amounts of the notes were added to the appraised value of the real estate, and divided by the number of heirs, and the amount due each was deducted from the indebtedness of F. M. Shurte and William Shurte, there was nothing coming to either of them. It is also claimed that, in view of that fact, the following papers were drawn and executed:

### EXHIBIT A.

"This indenture, made this fifth day of May, in the year of our Lord one thousand eight hundred and ninety-two, between William Shurte and Elizabeth, his wife, * * * and Elbridge Jewell, of Cassopolis, Michigan, of the second part, witnesseth: That the said parties of the first part, for and in consideration of the sum of one dollar, to them in hand paid by the said party of the second part, the receipt whereof is hereby confessed and acknowledged, do by these presents grant, bargain, sell, remise, release, alien, and confirm unto the said party of the second part, and his heirs and assigns forever, all those certain pieces or parcels of land situate and being in the township of Lagrange, county of Cass, and State of Michigan, and described as follows: * * * [Signed by William Shurte and the other heirs.]"

### EXHIBIT B.

"Be it known that the annexed deed from the heirs of Isaac Shurte, deceased, to Elbridge Jewell, is made on the following conditions and for the following reasons, to which we severally agree: Whereas, Sarah Van Riper, daughter of Elizabeth Ritter, both deceased, said Elizabeth Ritter being heir at law of Isaac Shurte, deceased,—said Sarah Van Riper died, leaving two children, as follows: Bertha and Flora; said children being

minors and heirs to the estate of Isaac Shurte, deceased: Therefore, it is the intent of this deed to said Elbridge Jewell, that he, at guardian's sale of the interest of the minor heirs aforesaid, shall become the purchaser of said interest, thus investing the whole title to said estate in him, for the purpose of deeding to the several heirs such shares as they may agree upon and dictate, and for no other purpose, and said deed hereto attached shall not be delivered until said sale, and then for no other purpose than as above stated.    [Signed by William Shurte and the other heirs.]

"Witness our hands this 5th day of May, A. D. 1892.
"HENRY C. HARMON."

"Description of lands awarded to Isaac Henry Shurté: East half of southeast quarter of section 16, except fourteen acres off of the west half.    *    *    *    Description of Mary Wolfe's, Lewis I. Ritter, Cynthia Ritter, Emily Ritter, Ida Ritter, and D. A. Ritter:    *    *    *    Sarepta Fletcher's description of land:    *    *    *    Description of I. Henry Shurte, Margaret Hardenbrooke, Mary Wolfe, Lewis I. Ritter, Emily Ritter, Cynthia Ritter, Ida Ritter, and D. A. Ritter land:    The south half of northwest quarter of section No. 32.    Description of William Shurte land:    The southeast quarter of the northeast quarter and 14 acres off from the north end of the east half of the southeast quarter, both in section 16.    Also, commencing at the southwest corner of southeast quarter section 15, in said township of Lagrange;    thence north 70 rods; thence east 26 rods; thence south 70 rods; thence west 26 rods to beginning,—containing 11⅜ acres.    Also, commencing at the center of section 15 in said township of Lagrange;    thence south, 38 minutes west, 22 chains and 68 links;    thence east 6 chains and 68 links;    thence north, 38 minutes east, 22 chains and 67 links;    thence west 6 chains and 68 links to beginning,—containing 15 acres. All said land being in town 6 south, range 15 west, Cass county.    Grantors being all the heirs of Isaac Shurte, deceased, except two minor children of Sarah Van Riper, deceased, daughter of said Elizabeth Ritter, deceased.

"It is hereby expressly agreed and understood that each of the above descriptions of land herein made are subject to correction if, when a survey of the premises is made, they shall be found erroneous, and each of those

interested in said lands deed the same with the under-
standing that such corrections may and shall be made
if found necessary. It is hereby further agreed and
understood between the parties hereto, whose names are
subscribed, that one-third of all the grain and hay now
growing on the land of the estate of Isaac Shurte, de-
ceased, shall belong to the several heirs of said estate,
except what grain and hay may be growing on the lands
to be deeded to William Shurte, and also the hay now
growing on the southeast quarter of the southwest quar-
ter of section 15. All spring crops belong to the parties
to whom the several lands may be deeded. And it is
further understood that the house now occupied by Wil-
liam Shurte must be vacated by the first day of September,
A. D. 1892. [ Signed by William Shurte and the other
heirs.] ''

It is urged that the execution of these papers resulted
in a complete settlement of the interests of the respective
heirs in the estate, and that what Mr. Jewell did after-
wards in executing deeds was simply carrying into effect
the settlement so agreed upon. It is the claim of com-
plainant's solicitors that, conceding that the heirs at law
understood the contents of these papers when they were
signed, even then they do not accomplish what is claimed
for them by the defendants; that they do not convey the
interest of the complainant in the real estate left by his
father; that they do not affect the title of the minor
grandchildren, and, so far as they attempt to do so, are
illegal. It is further claimed that the only title Mr.
Jewell gets to the real estate is by virtue of Exhibits A
and B, and for the purpose therein stated; and that these
papers are so indefinite as not to convey any title to him
which he could either retain or convey. It is further
claimed by complainant that, long before Mr. Jewell had
done any act indicating that he had accepted the trust
created, if any had been created, Mr. Jewell was informed
that he must not make any conveyances; that William
Shurte and F. M. Shurte would insist upon their right to
an undivided one sixth of their father's estate. It is the

claim of the complainant that he did not admit that he was liable on these notes, but, on the contrary, protested that they were not right, and that some of them were outlawed; that he insisted that, if he was to be charged with them, he should be credited with improvements he had put upon his father's farm, amounting to $3,000 and interest, and that the improvements and interest would amount to nearly as much as he ought to be charged upon the notes.   It is the complainant's claim that, at the time the negotiations were pending, he was so nearly blind that he was unable to see or read writing; that he was informed as to the contents of Exhibits A and B, and was advised that, if he signed them, Mr. Jewell would have no right to make any conveyances of any of the real estate until some subsequent agreement had been made; and that, relying upon that statement, he authorized his son to sign those two papers for him.   It is his claim that, as to the other exhibit, he never had any knowledge that it contained descriptions of land that were to be conveyed to the other heirs, leaving him out except as to the 82 acres, and that he never intended to convey away his interest in his father's estate by his signature to these papers, and, when he learned the defendants were putting that construction upon the papers, he at once notified Mr. Jewell that he should insist upon the same interest in his father's estate that he would have been entitled to had not the papers been signed.

I do not think it necessary for us to construe the legal effect of these three papers.   If the evidence were uncontradicted as to their execution, or if it were made to appear that complainant understood their contents when he signed them, it, of course, would be our duty to construe the papers.   The testimony, however, is very contradictory; the complainant and his witnesses swearing positively to one state of facts, and the defendants contradicting them.   The record does disclose, however, that at the first meeting of the heirs the complainant

111 Mich.—7.

presented a deed, already filled out, conveying to him
the 82 acres bought of his father, and asked the heirs to
sign it. It also discloses that, when the subject of the
notes was discussed, he insisted that the interest ought
not to be figured at more than 3 per cent.; that some of
the notes were outlawed; and that, if he was charged
with the notes, he ought to be credited with the improve-
ments. It also appears that, when the papers were exe-
cuted, complainant was so nearly blind as to be unable
to read the writings. It also appears very clearly that,
before Mr. Jewell acted at all in the matter, he was
notified by both William Shurte and F. M. Shurte that
they would not be bound by any act of his. These facts,
which were clearly established, taken in connection with
the value of the interest William Shurte had in the
estate, and the contradictory testimony in relation to
whether William understood the contents of the last
paper signed by him, and that its provisions neutralized
the provisions in Exhibit B, lead me to the conclusion
that William did not understand that the effect of signing
these papers would be to cut off his interest in the estate
left by his father, and that he never intended to relin-
quish that interest, and never received any consideration
for so doing.

It is urged that the court in chancery ought not to take
jurisdiction of this case because it is *res judicata.* This
claim is based upon the fact that, subsequent to the exe-
cution of Exhibits A and B, the complainant petitioned
the probate judge for the appointment of an administra-
tor; that a hearing was had, one witness sworn, and
Exhibits A, B, and C offered in evidence; that, upon the
hearing, the probate judge refused to appoint an admin-
istrator for want of jurisdiction, and because the estate
had been settled. We do not think the claim of *res
judicata* can be sustained. There was nothing in the
pleadings to indicate that the probate judge was called
upon to construe the effect of the alleged settlement.

The probate court would not have power to decree a specific performance of the agreement made by the parties, if it was a valid one, and they refused to carry it out; neither would it have the power to set aside the agreement and cancel it, if it was invalid. See *Perkins* v. *Oliver*, 110 Mich. 402; also, *Bush* v. *Merriman*, 87 Mich. 260.

The decree of the court below is affirmed, with costs.

LONG, C. J., MONTGOMERY and HOOKER, JJ., concurred. GRANT, J., did not sit.