PARKINSON *v.* PARKINSON.

PROBATE COURTS—DECREE IN PARTITION—EFFECT—TITLE UNDER DECREE—RES JUDICATA.

A decree of the probate court making partition among devisees, and deciding that one of them holds a life estate in the part allotted to her, acquiesced in by her, precludes her from thereafter asserting a different tenure.

Appeal from Wayne; Frazer, J. Submitted February 15, 1905. (Docket No. 158.) Decided March 28, 1905.

Bill by Jane E. Parkinson against Charles A. Parkinson, Ida J. Parkinson, Norman Parkinson, and Edward A. Parkinson to construe the last will and testament of Alva Ewers, deceased, and to quiet title. From a decree for complainant, defendants Norman and Edward A. Parkinson appeal. Reversed, and bill dismissed.

*Miller, Smith, Alexander & Paddock,* for complainant.

*Wilkinson, Post & Oxtoby,* for appellants.

HOOKER, J. Jane E. Parkinson filed the bill in this cause to settle the title to two city lots of which she is in possession and claims in fee, but which some of the defendants' counsel insist that she holds as tenant for life with remainder in fee to all of the defendants. The land belonged to her father, who undertook to dispose of it by will. The complainant claims that this will was void, for the reason that its provisions unlawfully suspended the power of alienation, and that in consequence the lands descended in accordance with the statute, whereby she took an aliquot part in fee instead of an estate for life, according to the terms of the will.

The will was dated February 6, 1851, and it provided

that most of the testator's real estate, including that in controversy here, should be held by his widow in trust until October 17, 1864, and that upon that date a final division of the property should be made as follows, viz., one-third to the widow, Jane G. Ewers, for her natural life, and the other two-thirds to the testator's three children, his two sons to receive their portions in fee simple, and the daughter, Jane E. Parkinson, the complainant, to take her share for life, with remainder to her heirs at law in fee simple. There was a further provision that the share of the widow should at her death be divided among the testator's children, each of the sons taking one-third in fee, and the daughter one-third for life, with remainder to her heirs at law in fee simple.

It is inferable that the will was probated, and after October 17, 1864, the widow's final account was allowed, and on December 10, 1864, the probate court made a decree (see 3 Comp. Laws, §§ 9443, 9444) directing a distribution of the estate according to the terms of the will, and appointing commissioners to make partition, as follows:

" Now, therefore, it is ordered, adjudged, and decreed by this court, the parties in open court assenting thereto, that partition and division of certain real estate hereinafter described, and of which the said Alvah Ewers died seised and possessed, be made among the parties entitled thereto, and that William B. Wesson, Levi Cook, and Winslow W. Wilcox, of the city of Detroit, be, and they are hereby, appointed commissioners to divide and make partition of all and several the real estate and premises of which the said Alvah Ewers died seised or was at his decease entitled, and that said commissioners in making division do set off and apart by a proper description to the said Jane G. Ewers, widow of said Alvah Ewers, the one-third part of all and several said real estate, to have and to hold the same during the term of her natural life; that said commissioners do divide and set off to said William C. Duncan, the grantee of said William Ewers, the one-third part of the balance of said real estate, less the sum of $1,513.42, so advanced to said William Ewers; and that said commissioners do proceed and set off to said Jane Parkinson, late Jane Ewers, and to Charles Ewers, the

balance of said real estate not so set off to said Jane G. Ewers and William C. Duncan, grantee; and that said commissioners in making partition and division of said real estate do set off to said William C. Duncan and to said Jane Parkinson and Charles Ewers each their share and part of said real estate by metes and bounds, or such other description by which the same may be known and described, and that, as to such part of said real estate as shall be set off to said Jane G. Ewers, the parties entitled thereto have leave to apply on the death of said Jane G. Ewers for a partition thereof."

The commissioners proceeded to partition the land, and certified and reported to the probate judge as follows:

"That they had allotted and assigned to Jane Parkinson (formerly Jane Ewers), wife of William Parkinson, of Detroit, Michigan, and daughter of said Alvah Ewers, deceased, to hold to her as provided for under said last will and testament, for and during the term of her natural life, and after her death to her heirs at law, their heirs and assigns, forever, in severalty in fee, as and for her and their right and portion of the said lands and premises as the same was adjudged to her and them by said court under said last will and testament of said Alvah Ewers, deceased, being all the following described pieces or parcels of land situated in Detroit, Wayne county, Michigan, described as lot three, block ten, Governor & Judge's plan."

They certified further:

"That they had allotted and assigned to Jane G. Ewers, of Detroit, Michigan, widow of said Alvah Ewers, deceased, one of the devisees under the last will and testament of said Alvah Ewers, deceased, to hold to her for and during the term of her natural life in severalty as and for her right and portion of the said lands and premises as the same was adjudged to her by said court under said last will and testament of said Alvah Ewers, deceased, certain other real estate, among which was lot No. three (3) of the Military Reserve on the north side of Larned street."

This report was filed, and on June 16, 1865, was confirmed upon the filing of the following consent:

" In the Matter of the Estate of Alvah Ewers, Deceased. In the Court of Probate for the County of Wayne.

" The undersigned, Jane G. Ewers, widow, Jane Parkinson, late Jane Ewers, Charles Ewers, and William C. Duncan, grantee of William Ewers, distributees or devisees of said Alvah Ewers, hereby consent that the report of the partition of said estate made by Levi Cook, William B. Wesson, and Winslow W. Wilcox, commissioners, be ratified and confirmed as against us and that an order be made by the Court of Probate to that effect.

" Signed this 16 June, 1865.

" JANE G. EWERS.

' " CHARLES EWERS.

" JANE PARKINSON.

" WILLIAM C. DUNCAN,

" By D. C. HOLBROOK, His Attorney."

Two of the defendants in the case are children of the complainant, and the other two are children of her deceased son. All but one were of age when the suit was begun. He was 16 years of age, and appears by guardian ad litem. The bill was taken as confessed by complainant's children Charles and Ida. The other defendants answered. A decree was granted complainant, and they have appealed.

Counsel agree that the will was void, and the principal, if not only, question of importance in the case, is whether the order of partition and complainant's acquiescence preclude her from making claim to an estate in fee. The questions before us are not numerous. They are: *First*, Was the assignment and partition by probate court more than an adjudication of the right of the complainant to possession of a share of this land and a setting off of her share to her in severalty ? and, *second*, If it would not otherwise be more than that, did complainant's consent to confirmation affect the question ?

At common law a writ of partition lay to separate the interests of copartners, and did not extend to voluntary cotenants who were not entitled to partition. During the reign of Henry VIII. the right to partition was extended, and made to apply to all tenancies in common. This

statute is said to have recognized or provided for equitable jurisdiction in some cases, if it did not already exist. In the time of William IV. the writ of partition was abolished by statute, and chancery had exclusive jurisdiction thereafter. [21 Am. & Eng. Enc. Law (2d Ed.), 1143.] This allusion to the history of partition is only for the purpose of showing that we received with the common law the chancery jurisdiction in partition. If we received any other concurrent jurisdiction, it is practically obsolete in this State.

There can be no question but that, had a court of equity made the decree that we have before us, such decree would have settled, not only complainant's right to possession, but also the extent of her title, and the character of her estate. Aside from any general power of this kind, our statute confers the power to do so. See 3 Comp. Laws, §§ 11013–11102. We may confidently say that the general understanding and practice contemplates something more than a mere dividing up of possessory rights, and it is not reasonable to suppose, as counsel contend, that the legislature had only that in view when it provided for partition by probate courts. Under the statute there must be an assignment of the property to be partitioned before there can be a partition. *Campau* v. *Campau,* 19 Mich. 116. The court could not leave it to commissioners to determine who should participate in the partition, or the aliquot parts which each should have. The court must determine who shall share, and what their respective shares are in the land, and the commissioners must recognize this finding, and make partition according to it. We cannot think that it was the intention that, after all this is done, the matter should be left in a state of uncertainty as to the estate each had taken under the will, so that, to ascertain, some other court would be obliged to intervene. It is more reasonable to think that it was intended to furnish to heirs, devisees, etc., a ready means of ascertaining definitely their interests in the ancestors' land, and have a determination of what particular parcels should be set off to them. That

the legislature has authority to do this cannot be doubted. See *Robinson* v. *Fair*, 128 U. S. 53. We cannot suppose that this jurisdiction was conferred merely as a convenient method of dividing premises held in common generally for the mere purpose of settling possessory rights, for it is not made to apply to all cases of cotenants. It is only where the subject is land belonging to an estate of which the court has jurisdiction that it can act. Authority to partition is ancillary to its jurisdiction to administer and distribute. When the proper case arises, it must determine who are the tenants in common in the property, and, if there is to be anything final about its decree, it must determine the rights and interests of such tenants as between themselves. When it does so, its decrees are as conclusive upon such parties as those of any other court. Thus, in the present case, the court must of necessity have ascertained from the will who were the devisees, and it is as apparent that it must also have ascertained their respective shares.

The case of *Robinson* v. *Fair*, 128 U. S. 76, deals with some of these questions. It arose over a decree of a probate court in California. As in all such cases, the jurisdiction was statutory. The court distinguished between "distribution" and "partition," as follows:

"We lay aside, as not open to dispute, the proposition that there is a difference between distribution and partition. And we are satisfied that that difference was in the mind of the legislature when it passed the original probate act, as well as when the Code of Civil Procedure was adopted. As correctly observed by counsel, distribution neither gives a new title to property, nor transfers a distinct right in the estate of the deceased owner, but is simply declaratory as to the persons upon whom the law casts the succession, and the extent of their respective interests; while partition, in most, if not in all, of its aspects, is an adversary proceeding, in which a remedial right to the transfer of property is asserted, and resulting in a decree which, either ex proprio vigore or as executed, accomplishes such transfer. * * *

"In a large number of the States, as the citations by counsel of statutes and decisions show, probate courts were and are invested with power to make partition, among heirs or devisees, of estates coming within their cognizance for settlement and distribution. * * * Such legislation, we suppose, has its origin in the belief that it is convenient, if not desirable, for all concerned in the estate of a decedent, that the same court which supervises the final settlement of the accounts of a personal representative, and ascertains and declares the interests of heirs in such estate as may remain after the demands of creditors are satisfied, should have the power to make partition. We are not prepared to say that this belief is not well grounded. The connection between the administration, settlement, distribution, and partition of an estate is such that the power to make partition may be justly regarded as ancillary to the power to distribute such estate, and therefore not alien to the probate system as it has long existed and now exists in many States."

This work would be but half done were not the decree of the probate court to determine the estate which the heirs or devisees should take. Counsel do not point out any substantial differences between our present statute, and that in force when the partition was made. Section 2, chap. 226, 3 How. Stat. (3 Comp. Laws, § 9443), requires the assignment (by the court) of the "residue of the estate to such persons as are by law entitled to it." While perhaps this might be said to apply to personalty only if it stood alone, section 5 provides:

"When the estate, real or personal, assigned to two or more heirs, devisees, or legatees, shall be in common and undivided, and the respective shares shall not be separated and distinguished, * * * partition and distribution may be made by three discreet and disinterested persons to be appointed commissioners for that purpose by the probate court," etc.

And section 18 provides:

"The partition, when finally confirmed and established, shall be conclusive on all the heirs and devisees and all persons claiming under them, and upon all persons interested."

If the assignment provided by section 2, above quoted, may be said to be not conclusive of rights, but is merely declaratory, as suggested in *Robinson* v. *Fair* (which we do not decide), nevertheless it cannot be doubted that parties to *proceedings for partition in equity* would be bound by a decision confirmatory of such assignment, and partitioning the land accordingly. The respective estates would be conclusively determined thereby. Instead of proceeding in chancery, the parties may ask partition by the probate court in such cases, and in our opinion its determination of the estate taken is as final as though a court of equity had been asked to intervene. The probate court may construe wills for certain purposes. It is necessary for it to do so in distributing estates. *Glover* v. *Reid*, 80 Mich. 232; *Knapp* v. *Knapp*, 95 Mich. 478; *Patterson* v. *Stewart*, 38 Mich. 402; *Kelly* v. *Reynolds*, 39 Mich. 464; *Langrick* v. *Gospel*, 48 Mich. 185; *Byrne* v. *Hume*, 84 Mich. 185; *Dean* v. *Mumford*, 102 Mich. 510.

Counsel for the defendants cite the case of *Haddon* v. *Hemingway*, 39 Mich. 617, as an authority sustaining the claim that partition does not settle the title. Under the will of the ancestor of Axford, the land was partitioned, and the premises in controversy were set off to him. Although thus partitioned, it was claimed that the will gave the executors and trustees the authority to sell them, and they did so, to Haddon, who took possession. Axford's wife secured a decree for alimony, and levied execution on the land, and sold it at execution sale to Hemingway, whereupon Haddon filed a bill to restrain the completion of the sale and to quiet his title. Defendants claimed the land to have belonged to Axford in fee. Complainant claimed that the executors held it from the ancestor under an active trust, and had authority to sell it. The question did not arise between Axford and his coheirs, but between him and his trustees. The assignment was of certain land, but the title which the court was dealing with was limited by the will, and nothing indicates that any at-

tempt was made to decide between the executors and Axford. The land was partitioned while the title, such as it was, remained unquestioned. On the other hand, the case of *Persinger* v. *Jubb,* 52 Mich. 304, is not in point. In that case partition was made between children of the deceased. Afterwards one contested the validity of the partition in an ejectment case upon the ground that one of the supposed heirs was illegitimate, and therefore not entitled to a share of the property. The court held that the question was set at rest in the partition proceedings. This falls short of the question that the complainant's counsel raise here.

We have been cited to no Michigan case that reaches this question, but after availing ourselves of the light shed by the briefs of counsel, and such authorities as we have been able to find, we are of the opinion that the decree in the case, which clearly decides the tenure of the complainant, is final, and her contention cannot prevail, although had she raised the question on the proceedings for partition, and appealed from the decree of the probate court, as she might have done under the statute (3 Comp. Laws, § 9458), it is probable that she would have prevailed. We are constrained to reverse the decree of the circuit court in chancery. A decree will be entered in this court dismissing complainant's bill, with costs of both courts.

CARPENTER, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.