## RASEMAN *v.* RASEMAN.

1. WILLS—PROBATE COURTS—SALE BY TRUSTEE—RES ADJUDICATA. In a suit to set aside a sale of real estate by a trustee because of alleged lack of authority, where the trustee named in the will, who was therein given express power to dispose of the entire estate, resigned and his successor sold a portion of the real estate without authority from the probate court, an order of the probate court construing the will and approving the annual account of such trustee showing such transfer, over plaintiff's objection, from which order he did not appeal, *held, res adjudicata*, and the suit was properly dismissed.[1]

[1] Trusts, 39 Cyc. p. 503.

2. TRUSTS—ALLOWANCE OF ANNUAL ACCOUNT FINAL.

    Under 3 Comp. Laws 1915, § 14089, the allowance of annual accounts of testamentary trustees on notice is final and binding on all parties in interest, except for fraudulent concealment or misrepresentation.[2]

3. COURTS—PROBATE COURTS MAY CONSTRUE WILLS.

    The probate court has exclusive jurisdiction in the settlement of estates, and has power to construe wills.[3]

Appeal from Wayne; Shepherd (Frank), J., presiding. Submitted January 20, 1926. (Docket No. 99.) Decided March 20, 1926.

Bill by Carl H. Raseman against Richard E. Raseman, the Union Trust Company, trustee under the will of Emma H. Raseman, deceased, and others to set aside a sale of real estate by said trustee. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Frank D. Eaman* (*Joseph Schiappacasse* and *Douglas, Barbour, Brown & Rogers,* of counsel), for plaintiff.

*Campbell, Bulkley & Ledyard* (*Selden S. Dickinson* and *Edward P. Wright,* of counsel), for defendant Union Trust Co.

*Moloney & Wing* (*Edmund E. Shepherd,* of counsel), for defendant Michigan Land & Home Corporation.

Emma Hesselbacher Raseman died in the city of Detroit on March 19, 1899, survived by her husband, defendant Richard E. Raseman, and two sons, plaintiff Carl H. Raseman and defendant Richard P. Raseman. She left a will which was duly probated, clause nine of which is as follows:

"*Ninth:* I hereby give and grant to my said executor and trustee complete power to dispose of my entire estate, real and personal, as may seem to him advantageous and convenient for 'the better realization

---

[2]Trusts, 39 Cyc.. p. 503; [3]Courts, 15 C. J. § 424.

of an income therefrom for the support and education of my surviving children, as well as for his own maintenance and support, giving him full power and authority to sell, assign and convey my estate, real and personal, upon such terms as may seem to him right for such purpose, hereby declaring my entire confidence in his discretion in such matters."

The husband qualified as trustee and managed the trust property until July 8, 1919, when he resigned and on August 4, 1919, defendant Union Trust Company was by the probate court duly appointed his successor as trustee and qualified.    Ninety-eight per cent. of the trust property was real estate, some improved and productive, some vacant and nonproductive. The property here involved being 20 acres on Van Dyke avenue and some vacant lots was not productive. With the growth of Detroit it increased in value. There was a mortgage on some of the property which was pressing.    On July 28, 1923, defendant Union Trust Company without obtaining a license to sell from the probate court and assuming to act under the clause of the will above quoted entered into a contract with defendant Michigan Land & Home Corporation for the sale of the Van Dyke property for $60,521.61 with a down payment of $10,521.61 and deferred payments. The other defendants are purchasers of vacant lots sold under like circumstances.

November 26, 1923, defendant Union Trust Company filed in probate court its fourth annual account. Notice of hearing on its allowance was given.    The account showed the sale of the real estate and a charge for brokerage fee or commission on its sale was made. Plaintiff Carl H. Raseman appeared on the hearing and objected to the allowance of the account on two grounds:    (1) That the trustee had no authority to make the sale, and (2) that the trustee could not charge an agent's commission.    The matter seems to have dragged along in probate court and on April 4th

following, the trust company filed an amended account and a petition for an allowance for extraordinary services and an amended petition was later filed. This amended account likewise showed the conversion of the real estate into personal property, and the petition asking for an additional allowance set up the negotiations for and sale of the real estate and asked compensation therefor. Bearing date April 24, 1924, but not filed until May 15th, an order was made by the probate court allowing the account except that the amount asked for extraordinary services was reduced and the statutory fee of trustees on the sale of real estate was allowed. There was no appeal from this order. We have accepted the verity of the calendar entries in giving these dates.

This bill was filed April 15, 1924, seeking to set aside the sale on the ground that the trust company was without authority to make it; that the power of sale was personal to the trustee named in the will and did not devolve upon his successor, and no authority to make the sale having been obtained from the probate court it was a nullity. Defendant trust company insisted that the power did pass to it as successor trustee; that such question was determined by the probate court and of necessity had to be determined on plaintiff's objections to the allowance of its account, and such determination not having been appealed from is *res adjudicata;* and that if such power was personal to Richard E. Raseman, the original trustee, it was exercised by him in approving the sale and actively assisting in making it. Defendant Michigan Land & Home Corporation stressed the laches of plaintiff and insisted that it had expended large sums of money in platting and putting the property on the market; that 173 lots had been sold to purchasers in good faith, and that plaintiff was estopped from asserting his claim.

The trial judge held that the power of sale given

the original trustee by the will did not pass to the trust company as successor trustee, but that the decision of the probate court was *res adjudicata* on that question.    He was also impressed with the claim of the Michigan Land & Home Corporation.    From a decree dismissing the bill, plaintiff appeals and his counsel thus clearly states the issue on this appeal:

"It is believed that the record raises these questions:
"(1) Did the power of sale granted by the will to the original trustee, pass to the substituted trustee?
"(2) Did the order of the probate court, dated April 24, 1924, but signed and entered May 30, 1924, render the issues herein *res adjudicata?*
"(3) Was the plaintiff estopped from asserting his right to have the sales canceled?"

FELLOWS, J. (*after stating the facts*).    We find it necessary to consider but one of the questions involved in the case although the excellent briefs and the fair presentation of the case by all counsel offers a temptation to treat the case in all its aspects.    But to sustain the bill plaintiff must succeed upon all his contentions.    If he fails in any one of them he can not succeed in the case.    As we have reached a conclusion adverse to him on one of the questions involved, we shall only consider that question.    Primarily, plaintiff must succeed on the first question; his bill is bottomed on the correctness of his claim of want of authority of the substituted trustee to make the sale, but if that question has been necessarily adjudicated in a court having jurisdiction of the parties and the subject-matter adverse to such claim, then such adjudication is *res adjudicata* and he is bound by it whether such decision is right or wrong.    We shall, therefore, consider only the question of *res adjudicata.*

Before discussing the cases let us restate what was before the probate court.    The accounts submitted showed the conversion of the real estate into personal

property, and the trustee was charged with such personal property in the inventory submitted and the real estate was said to be the same "except as shown in this account," making in effect a credit for the real estate sold.    In the accounts and petition compensation for making the sale either in the form of commissions or extra compensation was asked.    Manifestly, if the sale was a nullity, the trust company was not entitled to a credit in the real estate account, nor should it be charged with the proceeds of a void sale in the account of personal property.    It is equally obvious that the trust company was not entitled to compensation for making a sale it had no right or authority to make.    Indeed, that was the view of the attorney then representing plaintiff, and that was the issue then tendered in the probate court. There was, therefore, something before the probate court besides the simple checking over of items of receipts and disbursements.

We shall consider only a portion of the Michigan cases, as we are satisfied they have disposed of the question.    Doubtless *In re Doyle's Estate*, 147 Mich. 544, goes further to sustain plaintiff's contention than any other case decided by this court. ، It may be that it is not fully in accord with some of our later holdings, but it should be noted that the court then had before it a specific order made by consent and without notice and of which this court there said:

"This was not an adjudication by the court determining who was entitled to this estate and assigning the residue to such persons.    It was merely an order settling and allowing the final account of the administrator and ordering his discharge."

In *Shurte* v. *Fletcher*, 111 Mich. 84, the bill was filed to set aside a contract and it was claimed that the decision of the probate court declining administration of the estate of complainant's deceased father on the

ground that the estate had been settled by the parties between themselves was *res adjudicata.* But the jurisdiction to set aside the contract was in a court of equity, not the probate court. In declining to hold that the decision of the judge of probate was *res adjudicata,* it was said:

"We do not think the claim of *res judicata* can be sustained. There was nothing in the pleadings to indicate that the probate judge was called upon to construe the effect of the alleged settlement. The probate court would not have power to decree a specific performance of the agreement made by the parties, if it was a valid one, and they refused to carry it out; neither would it have the power to set aside the agreement and cancel it, if it was invalid."

*Michigan Home Missionary Society* v. *Corning,* 164 Mich. 395, is also relied upon by appellant. Some of the language used in that case was held to be *obiter* in a case to which we shall presently refer, but it should be noted that it was held (p. 405) that such an order as was before the court, *i. e.,* one requiring a legatee of money to accept anything but money, was a nullity.

*Byrne* v. *Hume,* 84 Mich. 185, is also relied upon by plaintiff. Language found in that case having reference to the simple allowance of the account of the executor tends to support his contention, but it will be noted that complainant in that case had filed a petition in probate court, the determination of which necessitated a construction of the will; she had not appealed from an adverse decision, and it was said:

"But it is her misfortune that she did not appeal from the order of the probate court. There, a petition was filed setting out, substantially, what is set out in this bill, and the probate court ruled the construction of the will against her. From this decree denying her rights she had not appealed. Under our former ruling, we have settled the doctrine of this State that the probate courts have the jurisdiction in the settle-

ment of estates to construe wills.  *Glover* v. *Reid,* 80 Mich. 228, and cases there cited.  This jurisdiction is given under How. Stat. § 5964.  It is true that the cases cited arose under appeals from probate courts; but the doctrine laid down in those cases clearly recognized the jurisdiction conferred by the statute. The decree of the probate court must therefore be held as determining the construction of the will, and *res judicata* to the present bill."

So here plaintiff went into probate court and made the same claim he here asserts.  He tendered to that court the issue of the validity of the sale under the ninth clause of the will.  To make the order made by the probate court it was necessary to construe that clause adversely to plaintiff's claim, then and now asserted.

The allowance of the annual accounts of testamentary trustees on notice is made by statute final and binding upon all parties in interest except for fraudulent concealment or fraudulent misrepresentation (3 Comp. Laws 1915, § 14089).  See, also, *Morton* v. *Johnston,* 124 Mich. 561; *Nowland* v. *Rice's Estate,* 138 Mich. 146.

But, as we have pointed out, there was something more before the probate court than a checking over of the receipts and disbursements.  The right of the trustee to sell real estate without obtaining a license from the probate court was challenged and the determination of the question of whether such right existed was necessary to decision.  This claim of right necessitated a construction of the ninth clause of the will.  If the language of that clause carried such right to the successor trustee, then no license was required; if not, one was required.  One construction of that clause would render the sale valid, another one void.  It was, therefore, necessary to construe the will.  It is settled beyond peradventure that the probate court has exclusive jurisdiction in the settlement

of estates and has the power to construe a will. Among the numerous cases so holding see *Tipson* v. *Jeannot,* 204 Mich. 403; *Glover* v. *Reid,* 80 Mich. 228; *Byrne* v. *Hume, supra; Calhoun* v. *Cracknell,* 202 Mich. 430. Having the jurisdiction to construe wills, its construction where necessarily involved must be final unless appealed from. In *Calhoun* v. *Cracknell, supra,* it was said:

"We therefore agree with the court below that in order to properly declare the succession, the probate court is obviously called upon to construe a will dealing with real, as well as personal estate. Under the statute cited, the probate court is invested with power, and, at the time of the disposition of the estate, has jurisdiction to construe a will and make disposition accordingly; and we are of the opinion that case was properly disposed of upon the ground that judgments of the probate court stand upon the same basis as judgments of other courts of record, are conclusive, and become *res adjudicata.*"

In *Riebow* v. *Ensch,* 220 Mich. 450, it was said by Mr. Justice WIEST, speaking for the court:

"The petition of plaintiff in the probate court squarely raised the question of whether the real estate belonged to the estate of George Riebow or to the estate of Ernestine Riebow. To determine that question the probate court had to construe the will, and did construe it, and held it gave Ernestine Riebow a life estate only.

"No appeal having been taken from such determination by the plaintiff herein, who was petitioner therein, and the very question here presented having been there determined, such former adjudication barred plaintiff from filing the bill to have the will construed."

In the recent case of *Chapin* v. *Chapin,* 229 Mich. 515, and *Thompson* v. *Thompson,* 229 Mich. 526, Mr. Justice SHARPE, who wrote both cases, so fully reviews the power of the probate courts and the application of the doctrine of *res adjudicata* to their decisions

as to leave little if anything more to be said. These cases fully sustain the contention of defendant trust company. The fact that the proceedings in the probate court dragged over several months' time and the order was not finally entered until after this bill was filed does not affect the question. The probate court acquired jurisdiction months before this bill was filed and the delay in decision did not oust it of jurisdiction.

The decree will be affirmed, with costs.

BIRD, C. J., and SHARPE, STEERE, WIEST, CLARK, and MCDONALD, JJ., concurred. SNOW, J., did not sit.